ANDERSON KILL & OLICK, P.C.
EDWARD J. STEIN
1251 Avenue of the Americas
New York, New York 10020
(212) 278-1745
(212) 278-1733

Attorneys for Defendant, Counter-Claimant
and Cross-Complainant First Advantage
Litigation Consulting, LLC

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TUDOR INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> FIRST ADVANTAGE LITIGATION CONSULTING, LLC, <br><br> Defendant. | Case No. 11CV3567 (LAK) <br> (Electronically Filed) <br><br> **ANSWER AND COUNTER-CLAIM AND DEMAND FOR JURY TRIAL FOR FIRST ADVANTAGE LITIGATION CONSULTING, LLC** |
| FIRST ADVANTAGE LITIGATION CONSULTING, LLC, <br><br> Counter-Claimant and Cross-Complainant, <br><br> vs. <br><br> AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, TUDOR INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY, <br><br> Counter-Claim Defendants | |

Defendant, First Advantage Litigation Consulting, LLC (First Advantage), a Virginia limited liability company whose headquarters is located in St. Petersburg, Florida and whose sole member is STG-Fairway Holdings, a Delaware corporation also headquartered in St. Petersburg, Florida, hereby answers Tudor Insurance Company's (Tudor) complaint filed April 26, 2011 (Complaint) in this matter and counter-claims in this matter as follows:

## ANSWER

1.  In answer to Tudor's complaint paragraph No. 1, First Advantage admits the same.

2.  In answer to Tudor's complaint paragraph No. 2, First Advantage admits that the paragraph states Tudor's contentions in this matter, but denies that Tudor's contentions have merit.

3.  In answer to Tudor's complaint paragraph No. 3, First Advantage admits the allegations of paragraph No. 3.

4.  In answer to Tudor's complaint paragraph No. 4, First Advantage admits that it is a Virginia limited liability company, but denies that its principal place of business is on 19 West 21st Street, New York, New York and alleges that its principal place of business is in St. Petersburg, Florida.  First Advantage affirmatively alleges that its sole member is STG-Fairway Holdings, a Delaware corporation also headquartered in St. Petersburg, Florida.

5.  In answer to Tudor's complaint paragraph No. 5, First Advantage denies the allegation that at all times in which Tudor's policies were in effect Backtrack was a New York corporation with its principal place of business in New York, New York, and affirmatively alleges that from their inception all of Tudor's policies were and remain in effect with respect to losses arising from occurrences transpiring in or arising from offenses committed anywhere in the United States during Tudor's policy periods regardless of when or where suit might be initiated in connection with those losses.

6.  In answer to Tudor's complaint paragraph No. 6, First Advantage denies the same.

7.      In answer to Tudor's complaint paragraph No. 7, First Advantage admits the same.

8.      In answer to Tudor's complaint paragraph No. 8, First Advantage denies the same and affirmatively alleges that New Jersey law applies to this coverage dispute and affirmatively alleges that New Jersey has the most significant contacts with and the greatest interest in this litigation.

9.      In answer to Tudor's complaint paragraph No. 9, First Advantage admits the same.

10.     In answer to Tudor's complaint paragraph No. 10, First Advantage admits that a declaration of the rights and party obligations of the parties is appropriate, but denies that this court should make such a determination as any determination would best be made by a court sitting in New Jersey. First Advantage further denies that Tudor has no adequate remedy at all.

11.     In answer to Tudor's complaint paragraph No. 11, First Advantage admits that it and its predecessor, Backtrack, are in the business of providing background investigations in the finance and investment industry and, except as may be specifically admitted or alleged below, denies the additional allegations of paragraph No. 11.

12.     In answer to Tudor's complaint paragraph No. 12, First Advantage admits the same.

13.     In answer to Tudor's complaint paragraph No. 13, First Advantage admits the execution of the alleged Stock Purchase Agreement, which speaks for itself, and further admits the fact of and existence of the 2004 Stock Purchase Agreement. Except as specifically admitted herein, First Advantage denies the allegations of paragraph no. 13.

14.     In answer to Tudor's complaint paragraph No. 14, First Advantage admits and alleges that First Advantage Corporation acquired all of the issued and outstanding shares of capital stock of Backtrack Reports, Inc. in approximately September of 2004, at which time First Advantage Corporation's majority shareholder was First American Corporation, a corporation whose shares were then publicly traded on the New York Stock Exchange. In approximately

November of 2009 First Advantage Corporation became a wholly owned subsidiary of the First American Corporation; however, in approximately June of 2010 First Advantage Litigation Consulting, LLC became a subsidiary of Corelogic, which, since approximately June 2010 has been a corporation whose stock has been publicly traded on the New York Stock Exchange. In approximately June of 2010, Corelogic transferred ownership of First Advantage Litigation Consulting, LLC to the Symphony Technology Group. Except as specifically admitted or alleged, First Advantage denies the allegations of paragraph no. 14.

15.     In answer to Tudor's complaint paragraph No. 15, First Advantage admits those matters admitted in paragraph no. 14 above and, except as specifically admitted, denies the allegations of paragraph no. 15.

16.     In answer to Tudor's complaint paragraph No. 16, First Advantage admits those matters admitted in paragraph no. 14 above and, except as specifically admitted, denies the allegations of paragraph no. 16.

17.     In answer to Tudor's complaint paragraph No. 17, First Advantage denies that First Advantage Corporation and/or First Advantage Litigation Consulting, LLC are currently subsidiaries of the First American Corporation.

18.     In answer to Tudor's complaint paragraph No. 18, First Advantage admits the same.

19.     In answer to Tudor's complaint paragraph No. 19, First Advantage admits the same.

20.     In answer to Tudor's complaint paragraph No. 20, First Advantage admits that what Tudor characterizes as the Underlying Lawsuit arose out of allegedly defamatory statements contained in investigative reports initially issued by Backtrack, and later by First Advantage Litigation Consulting, LLC, about those whom Tudor's complaint characterizes as the Underlying Plaintiffs. Except as specifically admitted, First Advantage denies the allegations of paragraph No. 20.

21.     In answer to Tudor's complaint paragraph No. 21, First Advantage admits that the language alleged appears in Exhibit A, but denies that the quoted language alone adequately characterizes the Underlying Lawsuit.

22.     In answer to Tudor's complaint paragraph No. 22, First Advantage admits the authenticity of Exhibit A to Tudor's complaint, but denies that the allegations of paragraph No. 22 adequately characterize or summarize Exhibit A.

23.     In answer to Tudor's complaint paragraph No. 23, First Advantage admits the same.

24.     In answer to Tudor's complaint paragraph No. 24, First Advantage admits the same.

25.     In answer to Tudor's complaint paragraph No. 25, First Advantage admits the same.

26.     In answer to Tudor's complaint paragraph No. 26, First Advantage admits the same.

27.     In answer to Tudor's complaint paragraph No. 27, First Advantage admits the same.

28.     In answer to Tudor's complaint paragraph No. 28, First Advantage admits the same.

29.     In answer to Tudor's complaint paragraph No. 29, First Advantage admits the same.

30.     In answer to Tudor's complaint paragraph No. 30, First Advantage admits the authenticity of Exhibit C to Tudor's complaint, but denies that the allegations of paragraph No. 30 adequately characterize Exhibit C.

31.     In answer to Tudor's complaint paragraph No. 31, First Advantage admits the authenticity of Exhibit D to Tudor's complaint, but denies that the allegations of paragraph No. 31 adequately characterize Exhibit D.

32.     In answer to Tudor's complaint paragraph No. 32, First Advantage admits that the court in the underlying lawsuit dismissed the Underlying Plaintiffs' complaint in the Underlying Lawsuit against some defendants therein citing, among other things, the one year statute of limitations. But First Advantage further affirmatively alleges that the same court refused to apply the same statute of limitations to the claims against First Advantage based on the same publications.

33.     In answer to Tudor's complaint paragraph No. 33, First Advantage denies the same.

34.     In answer to Tudor's complaint paragraph No. 34, First Advantage admits the same.

35.     In answer to Tudor's complaint paragraph No. 35, First Advantage admits the same.

36.     In answer to Tudor's complaint paragraph No. 36, First Advantage admits the same.

37.     In answer to Tudor's complaint paragraph No. 37, First Advantage admits that the Underlying Lawsuit went to trial and affirmatively alleges that the jury returned a verdict on May 9, 2011 and that judgment was entered on that verdict on May 20, 2011. That judgment is not final in that an appeal may still be taken therefrom.

38.     In answer to Tudor's complaint paragraph No. 38, First Advantage denies that the allegations of paragraph No. 38 accurately or adequately characterize the evidence introduced at trial in the Underlying Lawsuit.

39.     In answer to Tudor's complaint paragraph No. 39, First Advantage denies the same and affirmatively alleges that Zurich has denied coverage for the Underlying Lawsuit.

40.     In answer to Tudor's complaint paragraph No. 40, First Advantage admits the same.

41.     In answer to Tudor's complaint paragraph No. 41, First Advantage admits the same.

42.     In answer to Tudor's complaint paragraph No. 42, First Advantage admits the paragraph quotes language appearing in Tudor's policies, but denies that the quoted language has application to the Underlying Lawsuit.

43.     In answer to Tudor's complaint paragraph No. 43, First Advantage admits that Tudor's policies contain the language alleged.

44.     In answer to Tudor's complaint paragraph No. 44, First Advantage admits the authenticity of Exhibit H to Tudor's complaint; however, First Advantage is without information sufficient to form a belief as to whether or not Tudor had actual knowledge of the Underlying Lawsuit prior to March 31, 2011 and therefore denies Tudor's asserted lack of knowledge.

45.     In answer to Tudor's complaint paragraph No. 45, First Advantage is without information sufficient to form a belief as to the truth thereof and therefore denies the same.

46.     In answer to Tudor's complaint paragraph No. 46, First Advantage admits that on April 26, 2011 Tudor disclaimed coverage for the Underlying Lawsuit, but as specifically admitted herein, First Advantage denies the same.

47.     In answer to Tudor's complaint paragraph No. 47, First Advantage admits that Tudor's disclaimer of coverage for the Underlying Lawsuit quoted the notice provisions of Tudor's policy.

48.     In answer to Tudor's complaint paragraph No. 48, First Advantage specifically denies the absence of evidence to establish the alleged proposition that a personal and advertising injury offense took place during a 2001-2002 Tudor policy.

49.     In answer to Tudor's complaint paragraph No. 49, First Advantage admits that Tudor's disclaimer of coverage for the Underlying Lawsuit with respect to Tudor's 2003-2004 and 2004-2005 policies expressly referred to the so-called "'prior publications' exclusion".

50.     In answer to Tudor's complaint paragraph No. 50, First Advantage admits that Tudor denies coverage with respect to the Underlying Lawsuit in its entirety based on a variety of asserted positions, all of which First Advantage deny have application to Tudor's policies to

the Underlying Lawsuit. However, First Advantage specifically denies the correctness of Tudor's position.

51.    In answer to Tudor's complaint paragraph No. 51, First Advantage admits and alleges as admitted and alleged in response to paragraphs Nos. 1 to 50 above.

52.    In answer to Tudor's complaint paragraph No. 52, First Advantage admits that Tudor's policies speak for themselves and deny that paragraph No. 52 adequately characterizes the entirety of Tudor's policies.

53.    In answer to Tudor's complaint paragraph No. 53, First Advantage admits that Tudor's policies speak for themselves and denies that paragraph No. 53 adequately characterizes the entirety of Tudor's policies.

54.    In answer to Tudor's complaint paragraph No. 54, First Advantage admits that it is currently not in possession of evidence to establish the proposition that notification of the Underlying Lawsuit was given to Tudor prior to March of 2011, but First Advantage affirmatively alleges that any lack of notice was not prejudicial to Tudor and affirmatively alleges that any such lack of prior notice does not impair First Advantage's rights under Tudor's policies.

55.    In answer to Tudor's complaint paragraph No. 55, First Advantage admits that Tudor's policies speak for themselves and First Advantage denies that paragraph No. 55 adequately characterizes the entirety of Tudor's policies.

56.    In answer to Tudor's complaint paragraph No. 56, First Advantage admits that paragraph No. 56 states Tudor's contentions that but denies that those contentions are correct.

57.    In answer to Tudor's complaint paragraph No. 57, First Advantage admits an actual and justiciable (but not "justifiable") controversy exists regarding the nature and extent insurance coverage is owed to First Advantage by Tudor.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to Join Required Parties – FRCP 19)

58.     Tudor has failed to join parties in whose absence the court cannot accord complete relief among existing parties. Specifically, Tudor has failed to name: American International Specialty Lines Insurance Company, Federal Insurance Company, and Zurich American Insurance Company. Moreover, because these parties claim an interest relating to the subject of this action and are so situated that disposing of this action in their absence may, as a practical matter impair or impede their respective ability to protect that interest and also may leave either or both First Advantage Litigation Consulting, LLC and Tudor Insurance Company subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

### SECOND AFFIRMATIVE DEFENSE

#### (Waiver)

59.     First Advantage answers that to the extent evidence may support the proposition that Tudor has done so, Tudor has waived application of the notice provisions of Tudor's policies

### THIRD AFFIRMATIVE DEFENSE

#### (Estoppel)

60.     First Advantage answers that to the extent evidence may support the proposition, Tudor is estopped to enforce the application of the notice provisions of Tudor's policies.

### FOURTH AFFIRMATIVE DEFENSE

#### (Lack of Prejudice)

61.     First American answers that to the extent notice may not have been given of the Underlying Lawsuit to Tudor in compliance with the notice provisions of Tudor's policies, Tudor was not prejudiced thereby and Tudor should not be able to disclaim coverage for the Underlying Lawsuit based thereon.

## FIFTH AFFIRMATIVE DEFENSE

### (Application of New Jersey Law)

62.     This dispute should be adjudicated not under the laws of the State of New York, but should instead be adjudicated under the laws of the State of New Jersey.

## SIXTH AFFIRMATIVE DEFENSE

### (Improper/Inconvenient Venue and/or Forum Nonconveniens)

63.     Tudor's principal place of business is in New Jersey, not New York, and the Underlying Lawsuit was adjudicated in New Jersey and was initiated by individuals inhabiting New Jersey. No parties to this lawsuit are citizens of or reside in New York. Tudor initiated this litigation in New York for the sole purpose of trying to avoid adjudication of this matter in the state of New Jersey where Tudor is both resident and citizen. The court should dismiss this matter or hold this matter in abeyance to permit the issues involved to be litigated to resolution in New Jersey or transfer this case to the district court for New Jersey.

## SEVENTH AFFIRMATIVE DEFENSE

### (Barred By Counterclaim)

64.     Tudor's complaint is barred by matters alleged in the accompanying counterclaim.

## COUNTER CLAIM

1.     Plaintiff First Advantage Litigation Consulting, LLC, for its counterclaim complaint against plaintiff and counterclaim defendant Tudor Insurance Company and additional counterclaim defendants American International Specialty Lines Insurance Company, Federal Insurance Company, and Zurich American Insurance Company alleges as set forth below. First Advantage Litigation Consulting, LLC brings this counterclaim against Tudor Insurance Company to insure compliance with Federal Rule of Civil Procedure 13(a) and against additional counterclaim defendants American International Specialty Lines Insurance Company, Federal Insurance Company and Zurich American Insurance Company to insure compliance with Federal Rule of Civil Procedure 19(a)(1) – notwithstanding First Advantage Litigation Consulting,

LLC's contention this dispute would best be resolved in another venue as alleged above in First Advantage Litigation Consulting, LLC's answer to Tudor Insurance Company's complaint in this matter.

## SUBJECT MATTER JURISDICTION AND VENUE

2. The jurisdiction of this Court is founded on 28 U.S.C. § 1332. There is complete diversity between plaintiff and defendants. In addition, the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) in conjunction with Federal Rule of Civil Procedure 13(a).

## NATURE OF THE ACTION

4. Plaintiff brings this action: for declaratory relief as to the rights and obligations of all parties hereto under various policies of insurance issued by the counterclaim defendants to or for the benefit of the First Advantage in this matter; and, for recovery of policy benefits from the counterclaim defendants under policies of insurance issued by the defendants to or for the benefit of First Advantage. The particular loss at issue under the relevant policies of insurance arises from litigation initiated on February 8, 2006, hereinafter described as the Underlying Lawsuit, which was initiated in and went to trial and judgment in The Superior Court of New Jersey, Morris County.

## THE PARTIES

5. Plaintiff First Advantage Litigation Consulting, LLC is a Virginia Limited Liability Company with its principal place of business in St. Petersburg, Florida. Now, and since December of 2010 First Advantage Litigation Consulting, LLC's sole member has been STG Fairway Holdings, Inc. d/b/a/ First Advantage Corporation, a Delaware corporation with its principal place of business in St. Petersburg Florida. Until on or about June 22, 2005, First Advantage Litigation Consulting, LLC was known as CoreFacts LLC; at that time, CoreFacts LLC's name was changed to First Advantage CoreFacts LLC. On or about January 25, 2005, First Advantage CoreFacts LLC changed its name to First Advantage Litigation Consulting,

LLC. First Advantage Litigation Consulting, LLC is also, as more specifically described below, the successor by merger to Backtrack Reports, Inc.

6.      First Advantage Corporation acquired all of the issued and outstanding shares of capital stock of Backtrack Reports, Inc. in September of 2004, at which time First Advantage Corporation's majority shareholder was First American Corporation, a corporation whose shares were then publicly traded on the New York Stock Exchange.  In approximately November of 2009 First Advantage Corporation became a wholly owned subsidiary of the First American Corporation; however, in approximately June of 2010 First Advantage Litigation Consulting, LLC became a subsidiary of Corelogic, which, since approximately June 2010 has been a corporation whose stock has been publicly traded on the New York Stock Exchange.  In approximately June of 2010, Corelogic sold First Advantage Litigation Consulting, LLC to the Symphony Technology Group.

7.      Additional counterclaim defendant American International Specialty Lines Insurance Company (AIG) is now, and at all times relevant hereto was, an Alaska corporation with its principal place of business in New York, New York.  Notwithstanding locating its head office in New York, New York, AIG is not now, and at no time relevant hereto has AIG ever been, licensed as an insurer in the state of New York and is not now and has never been subject to the state of New York's supervision.[1]  AIG is a subsidiary of the American International Group, Inc., whose stock is publicly traded on the New York Stock Exchange.

8.      Additional counterclaim defendant Federal Insurance Company (Chubb) is an Indiana corporation with its principal place of business in Warren, New Jersey (Somerset County).  Chubb is a subsidiary of Chubb Corporation, whose stock is traded on the New York Stock Exchange.

9.      Counterclaim defendant Tudor Insurance Company (Tudor) is a New Hampshire corporation with its principal place of business in Franklin Lakes, New Jersey (Bergen County).

---

[1]   AIG's Policy, as hereinafter defined, prominently displays the following: "NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION."

Tudor is a member of the Western World Insurance Group, Inc. which is headquartered in
Franklin Lakes, New Jersey.

10.     Additional counterclaim defendant Zurich American Insurance Company (Zurich)
is a New York corporation with its principal place of business in Schaumburg, Illinois. Ultimate
beneficial interest of Zurich is owned by Zurich Financial Services Ltd, whose shares are traded
on the SIX Swiss Exchange.

**THE POLICIES OF INSURANCE**

**AIG's Claims Made Professional Liability Insurance Policy**

11.     AIG underwrote and issued AIG's Policy number 491-54-38 (AIG's Policy) to a
Named Insured identified in AIG's Policy's Declarations, Item No. 1 as "The First American
Corporation" for what the Declarations identifies as a "Policy Period" from April 30, 2005 to
April 30, 2006.

12.     AIG's Policy's BASE COMMON TERMS, CONDITIONS AND
LIMITATIONS, Section 1. provides that AIG's Policy is written in a "MODULAR FORMAT"
and "shall be comprised of the following components: (i) the Declarations, (ii) this BASE
Section, and (iii) one or more optional Coverage Modules" and that the "BASE Section shall be
applicable to all Coverage Modules" while "terms, conditions, exclusions and other limitations
of each Coverage Module shall control solely with respect to coverage afforded by that Coverage
Module."

13.     AIG's Policy's "BASE COMMON TERMS, CONDITIONS AND
LIMITATIONS" Section 2. INSURING AGREEMENTS provides:

> For Coverages A and B, and all other **claims**[2] made and reported
> coverage in this policy, solely with respect to **claims** first made

---

[2]   AIG's Policy's BASE COMMON TERMS, CONDITIONS AND LIMITATIONS, Section 3.
DEFINITIONS sets forth a number of definitions of terms employed throughout the policy. This
complaint will employ the convention of giving the definition of those defined terms in footnotes
associated with the defined terms the first time those defined terms are employed in this
complaint. A similar convention will be adopted for definitions given in other policies which are
the subject of this action. The AIG's Policy's definition of **claim** provides: "'**Claim**' means: (1)
a written or oral demand for money, services, non-monetary relief or injunctive relief; or (2) a
**suit**."

against an **insured**[3] and reported to **us**[4] during the **policy period**[5] or any applicable **extended reporting period**, and subject to the other terms, conditions, exclusions and other limitations of this policy, this policy affords the following coverage:
COVERAGE A:  LIABILITY FOR DAMAGES

**We**[6] shall pay amounts in excess of the applicable Retention and Coinsurance, **you**[7] or any **additional insureds** are legally obligated to pay as **damages**[8] arising from a **claim**
(i) made against **you** or such **additional insured**; or
(ii) for liability from others,
for **wrongful acts.**[9]

---

[3]  "'**Insured**' means each (1) of **you** . . . ." "'**You**' or '**Your**' mean each and every (1) **organization** . . . .." "'**Organization**' means (1) the **named insured**; and (2) each **subsidiary**." "'**Named insured**' means the entity listed as such in Item 1 of the Declarations", i.e. "The First American Corporation. "'**Subsidiary**' means: (1) if 'Blanket' has been checked in Item 1(c) of the Declarations [which it has], (a) any for-profit entity of which the **named insured** has management control ('**controlled entity**') on or before the inception of the **policy period** [April 30, 2005] either directly or indirectly through one or more other **controlled entities** . . .."
[4]  "'**We**,' '**us**,' '**insurer**' and '**our**' mean the insurer named in Item 6 of the Declarations": American international Specialty Lines insurance Company.
[5]  "'**Policy Period**' means the period set forth as such in Item 2 of the Declarations," i.e., "from:  April 30, 2005 to:  April 30, 2006."
[6]  "'**We**,' '**us**,' '**insurer**' and '**our**' mean the insurer named in Item 6 of the Declarations": American international Specialty Lines insurance Company.
[7]  "'**You**' or '**Your**' mean each and every (1) **organization** . . . .." "'**Organization**' means (1) the **named insured**; and (2) each **subsidiary**." "'**Named insured**' means the entity listed as such in Item 1 of the Declarations", i.e. "The First American Corporation. "'**Subsidiary**' means: (1) if 'Blanket' has been checked in Item 1(c) of the Declarations [which it has], (a) any for-profit entity of which the **named insured** has management control ('**controlled entity**') on or before the inception of the **policy period** [April 30, 2005] either directly or indirectly through one or more other **controlled entities** . . .."
[8]  "'**Damages**' means any amount that any **insured** shall be legally required to pay because of judgments, arbitration awards or the like rendered against an **insured**, or for settlements negotiated by **us** or by **you** in accordance with Coverage B, including, but not limited to:  (1) pre-judgment interest; (2) post-judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of the judgment within the applicable Limit of Liability; and (3) subject to this policy's other terms, conditions, exclusions and other limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts:  (i) punitive, (ii) exemplary and (iii) multiple damages; provided, however, the enforceability of this Subparagraph 3(i)(3) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages. This Definition is subject to the limitations set forth in Paragraph 3(s)."
[9]  Relevant to this definition, as initially amended by AIG's Policy's endorsement no 15 and then again modified by endorsement no. 17, AIG's Policy's "MPL MODULE" captioned "MISCELLANEOUS PROFESSIONAL LIABILITY" provides, in Section 2 DEFINITIONS MPL (b):  "'**Wrongful act**' means any actual or alleged:  (1) **personal injury peril**; or (2) negligent act, error, omission, breach of duty, misstatement or misleading statement; committed or omitted on or after the **retroactive date** in the performance of your professional services." Endorsement no. 17 also adds the following definition for the MPL MODULE: "'**Personal injury peril**' means any:  . . . (2) form of defamation or other tort related to disparagement or harm to character, reputation of (sic) any person, including, but not limited to, libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage or outrageous

COVERAGE B:  DEFENSE OF INSUREDS
(i) *Our Duty To Defend Insureds*:  **We** have the right and duty to
defend a **suit** brought against any **insured** for covered **wrongful
acts**, even if the **suit** is groundless or fraudulent.
(ii) *Claim Expenses*:  **We** shall pay for **claim expenses** any
**insured** incurs with **our** prior written consent in the defense of a
**suit** for covered **wrongful acts**. . . .

14.      AIG's Policy's BASE Section provides that AIG's Policy's "'First Inception

Date' means, for each Coverage Module, the date set forth in Item 4 of the Declarations as the

inception date of the first errors and omissions, professional, media or other liability policy that

(i) provides or provided the same or essentially the same coverage as such Coverage Module and

(ii) was issued by us or any or any other member company of the American International Group,

Inc. to the named insured [the First American Corporation] and continuously renewed by us or

any other member company through the Inception Date of this policy; or such other date

specified in Item 4 of the Declarations as such." Item 4 of AIG's Policy's Declarations provides

for a "First Inception Date" of "04/03/2003" for the MPL Module.

15.      As previously alleged, First Advantage Corporation, a Delaware corporation,

acquired all of the issued and outstanding shares of capital stock of Backtrack Reports, Inc. First

American Corporation was, at that time, under the "**management control**"[10] of the Named

---

conduct." "'**Retroactive date'** means the respective dates set forth in the Declarations as such
for each Coverage Module" which, for the MPL Module, the initial Declarations Item 4
identifies as "04/30/2003" but which THE FIRST AMERICAN CORPORATION
RETROACTIVE DATE ENDORSEMENT modifies for specified "organization[s]" not
including Backtrack. Relevant to this definition, as amended by AIG's Policy's endorsement no
15, AIG's Policy's "MPL MODULE," also captioned "MISCELLANEOUS PROFESSIONAL
LIABILITY" provides, in Section 2 DEFINITIONS MPL (a)The policy's "MPL Module"
provides that the definition of "**professional services**" includes "enterprise screening services,
including but not limited to: pre-employment background checks, exit interview services,
resident/tenant background checks, drug test analysis information, pre-employment physical
information services, and employee assistance plans (EAP)" and "pre-investment, acquisition,
merger, financial investigation and screening services."
[10]  "'**Management control**' means: (1) owning interests representing more than 50% of the
voting, appointment or designation power for the selection of a majority of: the Board of
Directors of a corporation, the management committee members of a joint venture or
partnership, or the members of the management board of a limited liability company; or (2)
having the right, pursuant to written contract or the by-laws, charter, operating agreement or
similar documents of an organization, to elect, appoint or designate a majority of: the Board of
Directors of a corporation, the management committee of a joint venture or partnership or the

Insured identified in AIG's Policy, First American Corporation, and was therefore a "**controlled entity**"[11] and a **subsidiary**[12] within the meaning of those terms as defined in AIG's Policy. Upon First Advantage Corporation's acquisition of the stock of Backtrack Reports, Inc. in or about September of 2004 First American Corporation therefore achieved "**management control**" of Backtrack Reports, Inc. and Backtrack Reports, Inc. became a "**subsidiary**" of the Named Insured, First American Corporation within the meaning of that term as defined in AIG's Policy. As a **subsidiary**, Backtrack Reports, Inc. also satisfies the definitions of the expressions **you**[13] and **insured**[14] set forth in AIG's Policy.

### Zurich's Occurrence/Offense Commercial General Liability Insurance Policies

16.     Zurich issued its general liability insurance policy nos. GLO6821459-07, GLO 6821459-08, GLO 6821459-09 and GLO 6821459-10 for the policy periods from: April 19, 2002 to April 19, 2003; April 19, 2003 to April 19, 2004; April 19, 2004 to April 19, 2005; and April 19, 2005 to April 19, 2006, respectively (Zurich's Policies).

17.     Zurich's Policies each identify the First American Corporation as the named insured on Zurich's Policies' COMMON POLICY DECLARATIONS. However, Zurich's Policies BROAD FORM NAMED INSURED endorsement provides:

> "Named Insured" and any subsidiary company as now formed or constituted, and any other company over which the Named Insured has active control so long as the Named Insured or any subsidiary company has an ownership of more than 50% of such company.

---

management board of a limited liability company."
[11]   "'**Subsidiary**' means:  (1) if 'Blanket' has been checked in Item 1(c) of the Declarations [which it has], (a) any for-profit entity of which the **named insured** has **management control** ('**controlled entity**') on or before the inception of the **policy period** [April 30, 2005] either directly or indirectly through one or more other **controlled entities** . . . ."
[12]   "[A]ny for-profit entity of which the **named insured** has **management control** ('**controlled entity**') on or before the inception of the **policy period** [April 30, 2005] either directly or indirectly through one or more other **controlled entities** . . . ."
[13]   "'**You**' or '**Your**' mean each and every (1) **organization** . . . .." "'**Organization**' means (1) the **named insured**; and (2) each **subsidiary**." "'**Named insured**' means the entity listed as such in Item 1 of the Declarations", i.e. "The First American Corporation."
[14]   "'**Insured**' means each (1) of **you** . . . .." "'**You**' or '**Your**' mean each and every (1) **organization** . . . .." "'**Organization**' means (1) the **named insured**; and (2) each **subsidiary**."

Due to First Advantage Corporation's acquisition of Backtrack Reports, Inc. on or about

September of 2004 and First American Corporation's corollary "active control" of and

"ownership of more than 50% of" Backtrack Reports, Inc. on that date, Backtrack Reports, Inc.

became insured under Zurich's Policies applicable to the periods from and after that date.

18.     Zurich's Policies' insuring clauses provide:

> We[15] will pay those sums that the insured[16] becomes legally
> obligated to pay as damages because of "personal and advertising
> injury"[17] to which this insurance applies.  We will have the right
> and duty to defend the insured against any "suit"[18] seeking those
> damages. . . . This insurance applies to "personal and advertising
> injury" caused by an offense arising out of your business but only
> if the offense was committed in the "coverage territory" during
> the policy period.

19.     Each of Zurich's Policies contains a provisions stating:  "This insurance does not

apply to: . . . 'Personal and advertising injury' arising out of oral or written publication of

material whose first publication took place before the beginning of the policy period."

### Chubb's Occurrence/Offense Commercial Excess

### and Umbrella Insurance Policies

20.     Chubb issued commercial excess and umbrella insurance coverage excess over

Zurich's policies of insurance for the years April 19, 2002 to April 19, 2003, April 19, 2003 to

April 19, 2004, April 19, 2004 to April 19, 2005 and April 19, 2005 to April 19, 2006 the latter

bearing Federal Insurance Company, AIG's Policy No. 7981-29-65 (Chubb's Policies).  Each of

Chubb's Policies underwrote both commercial excess and umbrella insurance coverage and

---

[15]   "Throughout this policy . . . [t]he words 'we,' 'us' and 'our' refer to the company providing
this Insurance."
[16]   "The word 'insured' means any person or organization qualifying as such under Section II –
Who Is An Insured."  "Throughout this policy, the words 'you and 'your' refer to the Named
Insured shown in the Declarations, and any other person or organization qualifying as a Named
insured under this policy."  "Section II – Who Is An Insured" provides that "you" are an insured.
[17]   "'Personal and Advertising Injury' means injury, including consequential "bodily injury",
arising out of one or more of the following offenses: . . . oral or written publication, in any
manner, of material that slanders or libels a person or organization or discourages a person's or
organization's goods, products or services."
[18]   "'Suit' means a civil proceeding in which damages because of . . . 'personal and advertising
injury' to which this insurance applies are alleged. . . ."

Excess Follow-Form Coverage expressly following the terms and conditions of the underlying

Zurich policies as well as providing Umbrella Insurance for "personal injury caused by an

offense that is first committed during the policy period" which the policies expressly defines as

including the "offense of: electronic, oral, written or other publication of material that: (1) libels

or slanders a person or organization (which does not include disparagement of goods, products,

property or services); or (2) violates a person's right of privacy." The Federal Policies also

contain an exclusion for the Umbrella Insurance stating that: "This insurance does not apply to .

. . personal injury arising out of any offense first committed before the beginning of the policy

period."

<h3 align="center">Tudor's Occurrence/Offense Policies of Commercial</h3>

<h3 align="center">General Liability Insurance</h3>

21.     Tudor issued Commercial Liability Insurance policies for the periods 1/1/17/2001

to 1/17/2003 (Policy No. 702267), 1/17/2003 to 1/17/2004 (Policy No. PGL714711) and

1/17/2004 to 1/17/2005 (Policy No. PGL722917) (Tudor's Policies).

22.     Tudor's policies contain the following insuring agreement:

> "We[19] will pay those sums that the insured[20] becomes legally
> obligated to pay us damages because of 'personal and advertising
> injury'[21] to which this insurance applies. We will have the right
> and duty to defend the insured against any 'suit'[22] seeking those
> damages. . . . This insurance applies to 'personal and advertising
> injury' caused by an offense arising out of your business, but
> only if the offense was committed in the 'coverage territory'
> during the policy period."

---

[19]   "The words 'we', 'us' and 'our' refer to the Company providing this insurance."
[20]   "The word 'insured' means any person or organization qualifying as such under Section II –
who is *an insured*." That provision specifies that "you" are an insured and "throughout this
policy the words 'you' and 'your' refer to the Named Insured show in the Declarations, and any
other person or organization qualifying as a Named Insured under this policy." The declaration
pages of Tudor's policies identify Backtrack Reports, Inc. as the named insured.
[21]   "'Personal and advertising injury' means injury, including consequential 'bodily injury',
arising out of one or more of the following offenses: . . . . d. oral or written publication of material
that slanders or libels a person or organization or disparages a person's or organization's goods,
products or services . . .."
[22]   "'Suit' means a civil proceeding in which damages because of . . . 'personal and advertising
injury' to which this insurance applies are alleged . . ."

23.     Tudor's policies provide that: "This insurance does not apply to: 'personal and

advertising injury': . . arising out or oral or written publication of material whose first

publication took place before the beginning of the policy."

### The Various Policies "Other Insurance" Clauses

24.     Each of AIG's Policy, Chubb's Policies, Tudor's Policies and Zurich's Policies

contain "other insurance" clauses:

25.     AIG's Policy provides:

"Except as otherwise stated to the contrary elsewhere in the
policy, such insurance as is provided by this policy shall apply
only as excess over any other valid and collectable insurance
available to any **insured** unless such other insurance is written
only as specific excess insurance over the **policy limit of
liability**[23] provided by this policy."
a.      The Tudor's Policies and Zurich's Policies provide:
"If other valid and collectable insurance is available to the
insured for a loss we cover under Coverages A or B of this
Coverage Part, our obligations are limited as follows:
        a.      Primary Insurance.
        This insurance is primary except when b. below applies.
If this insurance is primary, our obligations are not affected
unless any of the other insurance is also primary.  Then, we will
share with all other insurance by the method described in c.
below.
        b.      Excess Insurance.
        This insurance is excess over:
        (1)     Any of the other insurance, whether primary,
excess, contingent or on any other basis:
                (a)     That is Fire, Extended Coverage, Builder's
Risk, Installation Risk or similar coverage for "your work";
                (b)     That is Fire Insurance for premises rented
to you or generally occupied by you with permission of the
owner;
                (c)     This is insurance purchased by you to
cover your liability as a tenant for "property damage" to premises
rented to you or temporarily occupied by you with permission of
the owner; or
                (d)     If the loss arises out of the maintenance or
use of aircraft, "autos" or watercraft to the extent not subject to
exclusion g. of Section I – Coverage A – Bodily Injury And
Property Damage Liability.
        (2)     Any other primary insurance available to you
covering liability for damages arising out of the premises or

---

[23]  "'**Policy limit of liability**' means the aggregate limit of liability set forth as such in Item 3(a)
of the Declarations."  Item 3(a) of the Declarations provides the following:  "**POLICY
AGGREGATE**":  aggregate for all coverages combined (including claims expenses):
$15,000,000."

operations for which you have been added as an additional insured by attachment of an endorsement.
When this insurance is excess, we will have no duty under Coverages A or B to defend the insured again any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insured defends, we will undertake to do so, but we will be entitled to the insured rights against all those other insurers.
When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

> (1)     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
> (2)     The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

> c.     Method of Sharing.

> If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal parts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of the applicable limit of insurance to the total applicable limits of insurance of all insurers."

26.     Chubb's Policies of insurance provide:

> "If other valid and collectable insurance is available to the **insured** for loss we would otherwise cover under this insurance, our obligations are limited as follows.

> This insurance is excess over any **other insurance,**[24] whether primary, excess, contingent or on any other basis.

> We will have no duty to defend the **insurers** insured against any **suit** if any provider of any other insurance has a duty to defend such **insured** against such **suit.**

> We will pay only our share of the amount of **loss,** if any, that exceeds the sum of the total:

---

[24]   "**Other Insurance** means any insurance affording coverage that this insurance but also afford.  **Other insurance** includes any type of self-insurance or other mechanism arranged for funding of loss.  **Other insurance** does not include **insurance** or insurance negotiated specifically to apply in excess of this insurance."

- amount that all **other insurance** would pay for loss in the absence of this insurance; and

- of all deductible and self-insured amounts under all **other insurance**.

This insurance is not subject to the terms or conditions of any **other insurance**."

## THE CONTESTED PUBLICATIONS

27.     At different times within the years 2002 and 2006 Moore Capital Management, Inc., Finaltis, New Finance Capital Partners, and Meyer and Hoffman (collectively "Recipients," each a "Recipient" ) separately retained the services of Backtrack Reports, Inc. or its successor by merger First Advantage Litigation Consulting, LLC.  Each of the Recipients requested that Backtrack Reports, Inc. or its successor by merger First Advantage Litigation consulting, LLC investigate and report regarding:  Messrs. Troy Buckner and John Ryan and an entity formed by Mr. Bucker and with which both Messrs Buckner and Ryan were affiliated, New Wave Investment Corp. (NuWave Parties).[25]  In response to the first of these requests for information, personnel from Backtrack interviewed Messrs. Richard DeFalco and Mr. Alexander Hyman -- who either were or had been affiliated with Messrs. Buckner and Ryan's former employer, Hyman Beck[26] and Company, Inc – in approximately September of 2002.

28.     Acting in good faith and without malice, and with assurances from each of the Recipients that its publications would be held in confidence, Backtrack Reports, Inc. or its successor by merger First Advantage Litigation Consulting, LLC published to each of the Recipients not only information initially stated to Backtrack Reports, Inc. by Messrs. Hyman and DeFalco (Hyman's & DeFalco's Statements) but also other information pertaining to the NuWave Parties (Other Information).  First Advantage Litigation Consulting, LLC's publications to the Recipients were, generally, cumulative, with successive publications including not only those of Hyman's & DeFalco's Statements included in the immediately preceding publication,

---

[25]   The NuWave Parties have their offices in Morristown, New Jersey.
[26]   Hyman Beck is an investment management company whose offices are located in Florham Park, New Jersey.

but also including the Other Information published in the preceding publications and new Other Information; these publications are collectively referred to hereinafter as the "Disputed Statements." Disputed Statements were published to the Recipients on the dates specified below:

29.   To the Recipient Moore Capital in October of 2002.

30.   To the Recipient Finaltis in April of 2004 and May of 2004.

31.   To the Recipient New Finance in September of 2005 and November of 2005.

32.   To the Recipient Mayer and Hoffman in January of 2006.

### THE UNDERLYING LAWSUIT

33.   Sometime in or around September of 2005 New Finance told Mr. Buckner of the Disputed Statements appearing in Bactrack Report, Inc. "reports published in September and November of 2005 to Finaltis.

34.   On or about February 8, 2006 – within AIG's Policy's April 30, 2005 to April 30, 2006 **policy period** – the NuWave Parties initiated the Underlying Lawsuit in the Superior Court of the State of New Jersey, Morris County, Docket No. MRS-L-411-06 captioned *New Wave Investment Company, Troy Buckner, and John Ryan v. Hyman Beck and Company, Inc., Alexander Hyman, Richard DeFalco, First Advantage Litigation Corefacts, Inc. (f/k/a/ Backtrack Reports, Inc.), Doe Corporations 1-10 and John Does 1-10.* The NuWave Parties caused the summons and complaint in the Underlying Lawsuit to be served on Backtrack Reports, Inc. on or about February 9, 2006.

35.   The operative complaint in the Underlying Lawsuit is a second amended complaint captioned *Nuwave Investment Corp., Troy W. Buckner and John S. Ryan v. Hyman Beck & Company, Inc., Alexander Hyman, Richard A. Defalco, First Advantage Corefacts, Inc. (f/k/a Backtrack Reports, Inc.), Doe Corporations 1-10 and John Does 1-10.*

36.   The pleadings, discovery, testimony and other circumstances relevant to the Underlying Lawsuit manifest that the NuWave Parties alleged and contended, and still contend, that the Disputed Statements were false and defamatory and that the NuWave Parties sought recovery for recovery for alleged damage to their reputations arising from Disputed Statements.

37.    On Monday, May 9, 2011 the jury returned a verdict against First Advantage Litigation Consulting, LLC in the Underlying Lawsuit and the court entered judgment thereon on May 20, 2011.

## FIRST ADVANTAGE'S PERFORMANCE OF ITS OBLIGATIONS
## UNDER THE POLICIES OF INSURANCE

38.    First Advantage Litigation Consulting, LLC has performed all of its contractual duties to each of the counterclaim defendants under the contracts of insurance between those parties, or First Advantage Litigation Consulting, LLC's performance of those duties has been waived, excused or is otherwise justified. All conditions precedent to each of the counterclaim defendants' obligations to perform their obligations under the policies of insurance have occurred or their occurrence has been waived or excused by the counterclaim defendants.

## DEFENDANTS' ACTIONS IN CONNECTION WITH THEIR POLICIES
## AND THE UNDERLYING LAWSUIT

39.    Each of AIG, Chubb, Tudor and Zurich has denied the existence any legal obligations under their policies of insurance whatsoever to First Advantage Litigation Consulting, LLC with respect to the Underlying Lawsuit. Each of AIG, Chubb, Tudor and Zurich have repudiated any obligation to perform, and have refused to perform their obligations to First Advantage Litigation Consulting, LLC in connection with the Underlying Lawsuit.

40.    The counterclaim defendants have alleged various contentions with respect to the application of their policies' terms to the Underlying Lawsuit and Disputed Statements more as specifically stated below.

41.    With respect to the publication of Disputed Statements to the Recipient Moore Capital in October of 2002:

a.    Tudor asserts and contends that while this publication may have taken place during the took place during the 1/1/17/2001 to 1/17/2003 policy period of Tudor's Policy no. 702267, Tudor nonetheless has no obligation whatsoever to First Advantage Litigation Consulting, LLC because Tudor was not timely notified of the Underlying Lawsuit. Tudor

maintains this contention notwithstanding an inability to identify any prejudice associated with the allegedly untimely notification. First Advantage Litigation Consulting, LLC, Chubb and Zurich dispute this contention and maintain and contend to the contrary.

        b.     Zurich and Chubb assert and contend that while this publication also took place during the policy period of Zurich's Policy no. GLO6821459, April 19, 2002 to April 19, 2003 and Chubb's Policy for the year April 19, 2002 to April 19, 2003 they have no obligation to First Advantage Litigation Consulting, LLC because First American Advantage Corporation did not acquire Backtrack Reports, Inc. until September of 2004 and Backtrack Reports, Inc. did not achieve status as an insured under their policies until that time. AIG, First Advantage Litigation Consulting, LLC and Tudor dispute this contention and maintain and contend to the contrary.

        c.     AIG asserts and contends that publication took place prior to the **retroactive date** of 04/30/2003 specified in Item 4 of the DECLARATIONS of AIG's Policy and on that basis AIG asserts and contends that liability arising from this publication is not covered under AIG's Policy. First Advantage Litigation Consulting, LLC, Chubb, Tudor and Zurich dispute this contention and maintain and contend to the contrary.

    42.     With respect to the publication of Disputed Statements to the Recipient Finaltis in April of 2004 and May of 2004:

        a.     Tudor asserts and contends that while these publications may have taken place during Tudor's Policy no. PGL722917AIG's Policy period of 1/17/2004 to 1/17/2005, Tudor has no liability for any liability arising from this publication not only because Tudor was allegedly not timely notified of the Underlying Lawsuit but also because of the application of an exclusion.[27] First Advantage Litigation Consulting, LLC, Chubb, AIG and Zurich dispute this contention and maintain and contend to the contrary.

        b.     Chubb and Zurich assert and contend that while these publications may have taken place during the policy periods of one or two of the policies issued by Zurich and

---

[27] "This insurance does not apply to: 'personal and advertising injury': . . arising out or oral or written publication of material whose first publication took place before the beginning of the policy."

Chubb, these publications took place prior to First Advantage Corporation's acquisition of
Backtrack Reports, Inc. in September of 2004 and therefore prior to the time Backtrack Reports,
Inc. became insured under any of their policies of insurance. Zurich and Chubb also assert and
contend that any liability under their policies of insurance for this publication is barred by
application of an exclusion.[28]  First Advantage Litigation Consulting, LLC, AIG and Tudor
maintain and contend to the contrary.

          c.     AIG asserts and maintains that notwithstanding the fact this publication
took place after both the **retroactive date** and **first inception date** as specified in Item 4 of
AIG's Policy, 04/30/2003, AIG either has contractual obligations to First Advantage Litigation
Consulting, LLC in connection with this publication or that its obligations are excess over and
above the insurance coverage afforded under the other defendants policies of insurance. First
Advantage Litigation Consulting, LLC, Chubb, Tudor and Zurich maintain and contend to the
contrary.

    43.     With respect to the publication of Disputed Statements to the Recipient New
Finance in September of 2005 and November of 2005:

          a.     Tudor asserts and contends that this publication took place after the
January 15, 2005 expiration date of Tudor's final policy no. PGL722917. Based on this fact, as
more specifically alleged below, Tudor asserts and contends that it has no obligation in
connection with any liability arising from this publication; Tudor further asserts that any
obligation it may have in connection with this publication is barred by application of an
exclusion.[29]  AIG, Chubb and Federal maintain and contend to the contrary.

          b.     Chubb and Zurich assert and contend that while this publication took place
during the April 19, 2005 to April 19, 2006 policy period of Zurich's Policy no. GLO6821459-

---

[28]  "This insurance does not apply to: . . . 'Personal and advertising injury' arising out of oral or
written publication of material whose first publication took place before the beginning of the
policy period."

[29]  "This insurance does not apply to: . . . 'Personal and advertising injury' arising out of oral or
written publication of material whose first publication took place before the beginning of the
policy period."

10 and Chubb's corresponding policy no. 7981-29-65 and while the publication took place after First Advantage Corporation's September 2004 acquisition of Backtrack Reports, Inc., Chubb and Zurich have no obligation in connection with any liability arising out of the publication due to the application of an exclusion.[30]  First Advantage Litigation Consulting, LLC, AIG and Tudor maintain and contend to the contrary.

        c.      Notwithstanding the fact that this publication took place after both the **retroactive date** and **first inception date** as specified in Item 4 of AIG's Policy, 04/30/2003, AIG asserts and contends that either it has no obligation to First Advantage Litigation Consulting, LLC in connection with this publication or that its obligations are excess over those afforded by the other insurers.  First Advantage Litigation Consulting, LLC, Chubb, Federal and Tudor maintain and contend to the contrary.

      44.      With respect to the publication of Disputed Statements to the Recipient Mayer and Hoffman in January of 2006:

        a.      Tudor asserts and contends that publication took place after the January 15, 2005 expiration date of Tudor's final policy no. PGL722917 and that based on this fact and also based on the application of an exclusion[31] Tudor has no obligations to First Advantage Litigation Consulting, LLC in connection with any liability arising from this publication.  First Advantage Litigation Consulting, LLC, Chubb, Federal and Zurich maintain and contend to the contrary.

        b.      Chubb and Zurich assert and contend that while this publication took place during the April 19, 2005 to April 19, 2006 policy period of Zurich's Policy no. GLO6821459-10 and Chubb's corresponding policy no. 7981-29-65 and while the publication took place after First Advantage Corporation's September 2004 acquisition of Backtrack Reports, Inc., Chubb

---

[30]  "This insurance does not apply to: . . . 'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

[31]  "This insurance does not apply to: . . . 'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

and Zurich have no obligation in connection with any liability arising out of the publication due to the application of an exclusion.[32] First Advantage Litigation Consulting, LLC, AIG and Tudor maintain and contend to the contrary.

      c.     AIG asserts and contends that while this publication took place after both the **retroactive date** and **first inception date** as specified in Item 4 of AIG's Policy, 04/30/2003 either AIG has no obligation to First Advantage Litigation Consulting, LLC with respect to any liability arising from this publication or that any such obligations are excess over those owed by the other insurers. First Advantage Litigation Consulting, LLC, Chubb, Federal and Zurich maintain and contend to the contrary.

45.     First Advantage Litigation Consulting, LLC asserts and contends that it has an obligation to satisfy or pay at most one deductible or retention specified in one of the policies of AIG, Chubb, Federal, Tudor and Zurich and that First Advantage Litigation Consulting, LLC may elect, at its option, what deductible or retention it will satisfy. The insurers, and each of them, maintain and contend to the contrary and each asserts that that insurer may require First Advantage Litigation Consulting, LLC to satisfy at least one and possibly more than one deductible or retention under each of its policies.

46.     Each of AIG, Chubb, Federal and Zurich assert and contend that their obligation to First Advantage Litigation Consulting, LLC in connection with Disputed Statements and the Underlying Lawsuit, if any, is excess to the obligation of other insurers.

47.     The jury returned a verdict in the Underlying Lawsuit on Monday, May 9, 2009 (Verdict). The Verdict indicated that: some, but not all, of the Disputed Statements had been proven false; that some, but not all, of the Disputed Statements which had been proven to be false had been made recklessly; that some, but not all, of the Disputed Statements which had been proven to be false had been made negligently; that some, but not all, of the Disputed Statements which had been proven to be false had not been proven to have been made either

---

[32] "This insurance does not apply to: . . . 'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

negligently or recklessly; that the NuWave Parties plaintiffs should recover both presumed damages and actual damages; that Hyman & DeFalco's Statements defamed the NuWave Parties and that as between First Advantage Litigation Consulting, LLC and Hyman and DeFalco the majority of fault was attributable to Hyman and DeFalco.

## FIRST CLAIM FOR RELIEF

### (For Declaratory Relief)

48.    First Advantage Litigation Consulting, LLC re-alleges and incorporates herein by this reference the matters set forth in paragraph nos. 1 through 47 above as though fully set forth in this First Claim for Relief.

49.    A declaration of the rights and duties of the parties is necessary to avoid a multiplicity of actions between and among the parties.

## SECOND CLAIM FOR RELIEF

### (For Breach of Contract)

50.    First Advantage Litigation Consulting, LLC re-alleges and incorporates herein by this reference the matters set forth in paragraph nos. 1 through 49 above as though fully set forth in this First Claim for Relief.

51.    Each of the counterclaim defendants have failed to perform, or refuse to perform or repudiated their obligations to perform under the policies of insurance they issued to or for the benefit of First Advantage Litigation Consulting, LLC.

52.    As a result of AIG's, Chubb's, Tudor's and Zurich's respective breaches of their contracts of insurance First Advantage, Litigation Consulting, LLC has suffered and will concur to incur, monetary damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, defendant and counterclaim plaintiff First Advantage Litigation Consulting, LLC for prays

1.    That this court dismiss or abate this entire action to permit litigation in a more appropriate forum or, alternatively,

2.      That this court transfer venue in this matter to the United States District Court for the District of New Jersey or, alternatively,

3.      For judgment on the merits dismissing Tudor Insurance Company's complaint against First Advantage Litigation Consulting, LLC and entering judgment on First Advantage Litigation Consulting, LLC's counterclaim in favor of First Advantage Litigation Consulting, LLC and against each of AIG, Chubb, Tudor and Zurich as follows:

      a.      In the amount of compensatory damages, both special and general, proved at trial;

      b.      For prejudgment interest in the maximum amount allowed by law from the date such damages became due;

      c.      For declaratory relief stating the respective rights and obligations of the parties with respect to the Underlying Litigation; and

      d.      For all attorney's fees, expert fees, and costs of this action.

4.      For such further relief as the Court in its discretion deems just and appropriate.


Dated:  June 8, 2011                    ANDERSON KILL & OLICK


                            By:/s/ Edward J. Stein
                                Edward J. Stein
                                Attorneys for Plaintiff First Advantage
                                Litigation Consulting, LLC, successor
                                by merger to Backtrack Reports, Inc.

## DEMAND FOR JURY TRIAL

Defendant and counterclaimant First Advantage Litigation Consulting, LLC, demands a jury trial on all matters as to which it has such a right.

Dated:  June 8, 2011

ANDERSON KILL & OLICK

By: /s/ Edward J. Stein
    Edward J. Stein
    Attorneys for Plaintiff First Advantage
    Litigation Consulting, LLC, successor
    by merger to Backtrack Reports, Inc.