ANDERSON KILL & OLICK, P.C.
EDWARD J. STEIN
JEFFREY E. GLEN
1251 Avenue of the Americas
New York, New York  10020
P:  (212) 278-1000
F:  (212) 278-1733

Attorneys for Defendant, Counter-Claimant,
and Cross-Complainant First Advantage
Litigation Consulting, LLC

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TUDOR INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>vs.<br><br>FIRST ADVANTAGE LITIGATION CONSULTING, LLC,<br><br>            Defendant | Case No. 11CV3567 (LAK)<br>(Electronically Filed) |
| FIRST ADVANTAGE LITIGATION CONSULTING, LLC,<br><br>            Counter-Claimant and<br>            Cross-Complainant,<br><br>vs.<br><br>AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, TUDOR INSURANCE COMPANY, and ZURICH AMERICAN INSURANCE COMPANY,<br><br>            Counter-Claim<br>            Defendants | |

## DECLARATION OF DUKE F. WAHLQUIST IN SUPPORT OF DEFENDANT, COUNTER-CLAIMANT, AND CROSS-COMPLAINANT FIRST ADVANTAGE LITIGATION CONSULTING, LLC'S MOTION TO DISMISS, STAY, OR TRANSFER

I, Duke F. Wahlquist, do declare:

1. I am an attorney licensed to practice law in the State of California and I am a partner in the law firm of Rutan & Tucker, LLP. I make this declaration in support of my client's, First Advantage Litigation Consulting, LLC's, Motion to Dismiss, Transfer, or Stay this action. Unless indicated herein to the contrary, I have first-hand knowledge of the matters recited herein. As to those matters stated herein on information and belief, I am informed and believe those matters to be true.

2. On approximately Monday, March 28, 2011, Mr. Brett Jardine, General Counsel for First Advantage Corporation, contacted me with respect to insurance coverage for First Advantage Litigation Consulting, LLC ("First Advantage"), formerly known as Backtrack, Inc., in relationship to an action which I am informed and believe was initiated on February 8, 2006 in the Superior Court of the State of New Jersey, Morris County, Docket Number MRS-L-411-06 captioned *NuWave Investment Company, Troy Buckner and John Ryan v. Hyman Beck and Company, Inc., Alexander Hyman, Richard DeFalco, First Advantage Litigation CoreFacts, Inc. (f/k/a Backtrack Reports, Inc.), Doe Corporations 1-10 and John Does 1-10* (the "Underlying Litigation"). I am also informed and believe that trial of the Underlying Litigation was then scheduled on approximately April 11, 2011 and that two of First Advantage's insurers, American International Specialty Lines Insurance Company and Zurich American Insurance Company ("Zurich"), had recently participated in settlement conferences pertaining to the Underlying Litigation.

3.  On Monday, March 28, 2011, Mr. Jardine supplied me with a photocopy of Tudor Insurance Company's policy number PGL722917 for the policy period from January 17, 2004 to January 17, 2005; that policy recited on its face that it was a renewal of Tudor Insurance Company's policy number PGL714711.  I was unable to verify that Tudor Insurance Company ("Tudor") had previously been placed on notice of the Underlying Litigation.  The policy identified First Advantage's predecessor in interest, Backtrack, Inc., as the Named Insured.  At that time, I became informed and believed that trial of the Underlying Litigation would potentially involve allegedly defamatory statements published by First Advantage or Backtrack, Inc. in each of October of 2002, April of 2004, May of 2004, September of 2005, November of 2005 and January of 2006.  I then endeavored to ascertain the terms of Tudor's policy number PGL714711 for the policy year preceding policy number PGL 722917 and also to ascertain whether earlier policies were in existence.

4.  On the afternoon of Thursday, March 31, 2011, I was able to reach Mr. Steve Mechanic at the insurance brokerage firm which Tudor's policy number PGL722917 identified as the "producer":  The Mechanic Group, Inc.  Mr. Mechanic told me that Tudor had written earlier policies for Backtrack Reports, Inc. on the same policy form as employed in policy number PGL722917 for each of the policy years 1/17/2002 to 1/17/2003 and 1/17/2003 to 1/17/2004 and that other policies underwritten by Tudor for the same insured may have been in effect for earlier time periods.

5.  At 4:36 p.m. on Thursday, March 31, 2011, I gave written notice via email to Tudor of the existence of the Underlying Litigation.  A printout of the text of my

3

email is attached as Exhibit A. My email transmitted the then-operative Second Amended Complaint in the Underlying Litigation to Tudor.

6. In March and April of 2011, I was actively engaged as lead counsel in the jury trial of another matter in Orange County, California. I was, however, contacted by a Tudor representative – I believe she identified herself as Sheila O'Malley – in connection with the notice of the Underlying Litigation which I had sent to Tudor. Ms. O'Malley indicated Tudor needed additional information and I told Ms. O'Malley to work directly with Mr. Jardine and that I was sure he could provide Tudor with any needed information.

7. I did receive a copy of an email chain dated April 6, 2011, the text of which is printed in Exhibit B, reflecting that Tudor's claims consultant, Sheila O'Malley, had been in contact with Mr. Jardine who, in turn, put Tudor's coverage counsel, Margaret F. Catalano, in contact with defense counsel in the Underlying Litigation with instructions to permit Ms. Catalano access to defense counsel's file.

8. I received a copy of an email from Mr. Bret Jardine to Zurich dated April 20, 2011, a copy of which is attached as Exhibit C, from which I am informed and believe that on Tuesday, April 19, 2011, Ms. O'Malley told Mr. Jardine that Tudor's coverage counsel was "still reviewing" the matter.

9. I received an email dated Thursday, April 21, 2011, a copy of which is attached hereto as Exhibit D, in which O'Malley stated "our [Tudor's] coverage attorney has completed her research and a position letter will be sent out in the next day or so." Ms. O'Malley never communicated that Tudor's lawyer was in fact preparing a lawsuit.

10. On the morning of Tuesday, April 26, 2011, I received a phone call from a woman who identified herself as Margaret Catalano, coverage counsel for Tudor. In that phone call, Ms. Catalano indicated that Tudor would be denying First Advantage's claim for coverage in connection with the Underlying Litigation on the basis of a late notice, with additional reservations to disclaim coverage based on other policy provisions and, most significantly, that Tudor had initiated but not yet served a declaratory relief action against First Advantage in the state of New York. By 12:51 p.m. on Tuesday, April 26, 2011, Ms. Catalano had forwarded to me, via email, a copy of which is attached as Exhibit E, a letter disclaiming coverage in connection with the matter.

11. Upon information and belief, the majority of the witnesses from the Underlying Litigation reside in New Jersey. Of the thirteen witnesses who testified at trial, the following eight reside in New Jersey: Troy Buckner, John Ryan, Casey Drucker, Alexander Hyman, Carl Beck, David McCormick, Robert Keck, and Edward Rzeszowski.

Executed under penalty of perjury under the laws of the United States of America in Costa Mesa, California on July 18, 2011.

Duke F. Wahlquist