**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TUDOR INSURANCE COMPANY,<br>　　　　　　Plaintiff,<br><br>vs.<br><br>FIRST ADVANTAGE LITIGATION<br>CONSULTING, LLC,<br>　　　　　　Defendant | Civil Action Nos.:<br><br>11-CV-3567 (KBF)<br>11-CV-8923 (KBF) |

FIRST ADVANTAGE LITIGATION
CONSULTING, LLC,

　　　　　　Counter-Claimant and
　　　　　　Cross-Complainant,

vs.

AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
COMPANY, FEDERAL INSURANCE
COMPANY, TUDOR INSURANCE
COMPANY, and ZURICH AMERICAN
INSURANCE COMPANY,

　　　　　　Counter-Claim
　　　　　　Defendants

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**FIRST ADVANTAGE LITIGATION CONSULTING, LLC'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST**
**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY**

## INTRODUCTION

First Advantage Litigation Consulting, LLC ("First Advantage") submits this reply memorandum in support of its Motion for Partial Summary Judgment against American International Specialty Lines Insurance Company ("AISLIC"). This memorandum addresses the most central of the erroneous arguments that AISLIC makes in opposition to First Advantage's motion.[1]  More specifically: Exclusion O does not bar coverage; a $50,000 SIR[2] applies, not a $250,000 SIR; and, whatever more general statements may be made about the insurability of punitive damages, the AISLIC Policy covers the punitive damages awarded against First Advantage in the NuWave Action.

## ANALYSIS

### I.   NEW JERSEY SUBSTANTIVE LAW SHOULD GOVERN THIS CASE

As AISLIC acknowledges, New Jersey law does not differ from New York law (which AISLIC claims applies) on the relevant legal issues. AISLIC's main argument – that Exclusion O bars coverage for the NuWave Action – presents a question of policy interpretation, the answer to which is the same under the law of either state.

First Advantage nonetheless maintains that insofar as there may be a conflict, New Jersey substantive law should apply here. New York choice of law principles employ the "center of gravity" approach in contract cases. Zurich Ins. Co. v.

---

[1] First Advantage respectfully refers the Court to its principal brief in support of this motion [D.E. 87] and its brief in opposition to AISLIC's Motion for Summary Judgment [D.E. 116], which lend further support to the arguments made herein. Furthermore, First Advantage incorporates herein the facts set forth in the aforementioned briefs.

[2] The defined terms herein carry the same meaning as in First Advantage's opening brief.

Shearson Lehman Hutton, Inc., 642 N.E.2d 1065, 1068 (N.Y. 1994).  Of particular importance to this action is the rule that in New York, a suit determining an insurance company's duties respecting events that took place in a particular state is governed by that state's law.  New York State Ins. Fund v. Mount Vernon Fire Ins. Co., No. 03 Civ. 6652, 2005 WL 82036, at *3 n. 1 (S.D.N.Y. Jan. 13, 2005); Illinois Nat'l Ins. Co. v. Banc One Acceptance Corp., No. 05-CV-1260, 2008 WL 5423262, at *10 (N.D.N.Y. Dec. 29, 2008); U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, TZVI, No. 99-CV-7398, 2004 WL 2191051, at *4 (E.D.N.Y. Sept. 30, 2004).  Additionally, New Jersey is where the NuWave Action was litigated, where the verdict was entered, where First Advantage sought a defense from AISLIC, where AISLIC's failure to perform injured First Advantage, where five of the parties to the NuWave Action are domiciled, and where two of the parties to this action have their principal places of business.  Based on the center of gravity approach and the rule favoring application of the law of the state in which the underlying events occurred, New Jersey substantive law should govern this case.

## II.    EXCLUSION O DOES NOT BAR COVERAGE FOR THE NUWAVE ACTION

### A.    The October 23, 2002 BackTrack Report Did Not Give Rise To Liability And Is Not A "Wrongful Act."

AISLIC relinquished its right to assert Exclusion O as a bar to coverage by failing to raise this defense until after the NuWave Action verdict, *more than five years* after First Advantage timely gave notice.[3]  Regardless of AISLIC's waiver, however,

---

[3] See D.E. 116 at 13-14.

close textual analysis of Exclusion O[4] and other policy provisions demonstrates that Exclusion O does not apply on its terms.

AISLIC's argument breaks down into two alternative syllogisms, one invoking Exclusion O, ¶ (1) and the other invoking Exclusion O, ¶ (2).  Both of the syllogisms begin with the false premise that "the report giving rise to First Advantage's liability in the NuWave Action was published on October 23, 2002."  D.E. 92 at 14-15; D.E. 113 at 11-12.  This premise is a legal impossibility.  New Jersey's statute of limitations for libel actions requires that suit be commenced within one year of publication of the allegedly libelous statement.  N.J.S.A. 2A:14-3.  Therefore, the NuWave Action verdict can be predicated only on libelous publications that took place within the year prior to February 8, 2006, the date the NuWave Action was filed.  The first premise of AISLIC's syllogisms quite simply, cannot be true.

The second erroneous premise of AISLIC's syllogism invoking Exclusion O, ¶ (1) is that the October 23, 2002 BackTrack Report was a "**wrongful act** . . . committed or omitted prior to the applicable **retroactive date**" of April 30, 2003.  Linking the first and second premises with Exclusion O, ¶ (1), AISLIC urges that First Advantage's liability in the NuWave Action comes within the scope of Exclusion O, ¶ (1).  This is wrong because Endorsement # 17 § 4 defines "**wrongful act**" as:  "any actual or alleged … **personal injury peril** … committed … on or after the **retroactive date** [4/30/2003] in the performance of **your professional services**."  JSOF ¶ 142.  By definition then, the October 23, 2002 publication is not a "**wrongful act**," and it certainly

---

[4] Exclusion O states:  "This policy does not cover any **claim**: . . . made against an **insured** alleging, arising out of or resulting, directly or indirectly from, (1) any **wrongful act** or (2) **liability from others** based upon, relating to or in connection with any act, error or omission, occurring, committed or omitted prior to the applicable retroactive date."  JSOF ¶¶ 140-41.

3

was not "committed or omitted prior to the applicable **retroactive date**" of April 30,

2003.   Because AISLIC reasons from not just one, but two, false premises, Exclusion

O, ¶ (1) does not apply.

The second erroneous premise of AISLIC's syllogism involving Exclusion

O, ¶ (2) is that First Advantage's liability in the NuWave Action (which AISLIC's false

first premise assumes arises from the October 23, 2002 BackTrack Report) is "**liability**

**from others** based upon, relating to or in connection with any act, error or omission,

occurring, committed or omitted prior to the applicable **retroactive date**" of April 30,

2003.  But the AISLIC Policy defines "**liability from others**" to mean "vicarious liability

of any **insured** for **damages** from **wrongful acts**," i.e., "any actual or alleged: **personal**

**injury peril** ... committed ... on or after the **retroactive date** [4/30/2003] in the

performance of **your professional services**."  Accordingly, any assumption of liability

by First Advantage for the October 23, 2002 BackTrack Report simply does not meet

the definition of "**liability from others"** because it is not liability "for **damages** from

**wrongful acts**."  Thus, even accepting AISLIC's false first premise regarding the

October 23, 2002 publication as the source of First Advantage's liability, Exclusion O,

¶ (2) simply does not apply.  Not surprisingly, two false premises lead to a wrong

conclusion.

Reading Exclusion O in concert with Sections 5(a)(2)&(3) and Section

6(a), which explain the meaning of "**loss**" for purposes of limiting AISLIC's liability with

limits of liability and a Retention, and Endorsement # 17 § 4, which defines "**wrongful**

**act**," does nothing to alter this analysis.  Section 5(a)(3) provides:  "**Loss** arising out of

the same **wrongful acts**, or a series of continuous, repeated or related **wrongful acts**

4

shall be deemed to arise from the first such **wrongful act**." JSOF ¶ 143. Because the

October 23, 2002 publication does not meet the definition of "**wrongful act**," it has no

nexus with Section 5(a)(3). The only impact of Section 5(a)(3) on First Advantage's

coverage is that any "**loss**" arising out of the publications on April 14, 2004, May 11,

2004, May 27, 2005, September 26, 2005, November 10, 2005, and January 9, 2006 –

which admittedly are "**wrongful acts**" – arises out of the April 14, 2004 publication,

which took place after the "**retroactive date**" of April 30, 2003. That "**loss**" is, under

Section 5(a)(2), subject to a single limit of liability and, under Section 6(a) subject to a

single Retention.[5]

**B.      First Advantage's Characterization Of The Backtrack Reports In The
          NuWave Action Does Not Support Exclusion O's Application.**

AISLIC alleges that Exclusion O bars coverage based on First

Advantage's representations in the NuWave Action. In so doing, AISLIC has implicitly

asserted the doctrine of judicial estoppel, which prevents parties from benefiting by

making inconsistent arguments before different tribunals. AISLIC's failure to argue

explicitly the doctrine is unsurprising, because it cannot satisfy the elements of judicial

estoppel. Judicial estoppel requires a showing of bad faith by the party which has

adopted inconsistent positions. Montrose Med. Grp. Participating Sav. Plan v. Bulger,

243 F.3d 773, 780-81 (3d Cir. 2001). Bad faith cannot exist "unless the earlier position

---

[5] Coverage for the NuWave Action is clear as a matter of law. Even if this Court determines that the
NuWave Action is not indisputably covered, however, the policy provisions at a minimum are ambiguous
and should therefore be construed in the policyholder's favor. Ameron Int'l Corp. v. Ins. Co. of State of
PA, 242 P.3d 1020, 1024-1025 (Cal. 2010); Hampton Med. Grp., P.A. v. Princeton Ins. Co.,840 A.2d 915,
919 (N.J. Super. App. Div. 2004); Brabender v. Northern Assurance Co. of North America, 65 F.3d 269,
273 (2d Cir. 1995). "If there is *any doubt, uncertainty or ambiguity* in the phraseology of a policy, or if the
phraseology is susceptible to two meanings, the construction favoring coverage *must* be adopted."
Hampton Med. Grp., P.A., 840 A.2d at 920 (internal quotation omitted) (emphases added).

5

was accepted by a court or agency." Id. at 782. Indeed, the Third Circuit explains that this is the "consensus view" among other jurisdictions to consider the question. Id.[6]

Here, the NuWave Action Court resoundingly rejected the representation in question – that the first and subsequent reports were qualitatively identical. JSOF Ex. 32, at FADa 44. Therefore, AISLIC's implied judicial estoppel argument is without merit.

More importantly though, even if the court accepted the notion that the reports are virtually qualitatively the same (though published to different recipients), that notion has no relevance to the textual analysis made above. Even an absolute qualitative identity between all of the publications will not render the October 23, 2002 publication a "**wrongful act**," nor will it imply that First Advantage's liability arose from the earlier publication, nor will it render any such liability "**liability from others**."

### III.   THE APPLICABLE SIR IS $50,000

As set forth in First Advantage's opposition to AISLIC's Motion for Summary Judgment, Endorsement # 16 demonstrates that the insurance coverage claim at issue is subject to a $50,000 SIR. The BackTrack Reports, which help First Advantage clients decide whether to invest money with investment management firms, are "pre-investment investigation services." BackTrack and First Advantage CoreFacts LLC never conducted pre-employment background checks, as AISLIC contends. Jardine Decl. II ¶ 8.

---

[6] The laws of the jurisdictions at issue in this litigation are in accord.  See Wight v. BankAmerica Corp., 219 F.3d 79, 90 (2d Cir. 2000) ("A party invoking judicial estoppel must show that … the prior inconsistent position was adopted by the first court in some manner.") (internal quotation omitted); Jackson v. Cnty. of Los Angeles, 70 Cal. Rptr. 2d 96, 103 (App. Div. 1997) ("In accordance with the purpose of judicial estoppel, we conclude that the doctrine should apply when … the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true) …") (emphasis added).

6

AISLIC misconstrues the BackTrack Reports by arguing that since they analyze "employees" of investment management firms, they are "pre-*employment* background checks" subject to the $250,000 SIR.  Pre-employment background checks, however, are used to screen individuals that First Advantage clients are considering hiring as full-time employees.  Id. at ¶ 7.  Since the subjects of the BackTrack Reports were not potential full-time employees of First Advantage clients, AISLIC's argument fails.

AISLIC's contention that the BackTrack Reports constitute "pre-employment background checks" is internally inconsistent and ignores the undisputed facts.  AISLIC argues that the reports "were styled as background checks of the principles [sic] of a hedge fund."  D.E. 113 at 14.  Buckner and Ryan, as principals of NuWave, were owners and managers.  They also were employed by NuWave, but the reports were not made to NuWave as a pre-employment check; rather, they undisputedly were prepared for potential investors in NuWave prior to making investment decisions.

AISLIC's contention also lacks support in the policy language.  AISLIC argues that providing BackTrack Reports to potential investors in the hedge fund is an "enterprise screening service," which the AISLIC Policy describes as "including but not limited to pre-employment background checks, exit interview services, resident/tenant background checks, drug test analysis information, pre-employment physical information services, and employee assistance plans (EAP)."  JSOF Ex. 8 at AISLIC000051.

7

Applying the *noscitur a sociis* maxim, the phrase "enterprise screening service" must be construed by consideration of the company in which it is found and the meaning of associated words. See Sealed Air Corp. v. Royal Indem. Co., 961 A.2d 1195, 1206 (N.J. Super. App. Div. 2008) (construing an insurance policy, New Jersey courts "apply the maxim of noscitur a sociis … mean[ing] that a word is known from its associates. Words of general and specific import take color from each other when associated together, and thus the word of general significance is modified by its associates of restricted sense.") (internal quotes and citation omitted); Popkin v. Sec. Mut. Ins. Co., 367 N.Y.S.2d 492, 495 (App. Div. 1975) (applying *noscitur a sociis* to interpret insurance policy).

All but one of the examples of "enterprise screening services" in the AISLIC Policy relate to employment decisions, not investments, and the sole exception is "resident/tenant background checks," which relates to management of rental property, not investments in hedge funds. Thus the phrase "enterprise screening service," and the larger SIR for such services, should be limited to employment or property management contexts, and the Court should hold as a matter of law that the AISLIC Policy's $50,000 per claim SIR for "pre-investment, acquisition, merger, financial investigation and screening services" should apply to the BackTrack Reports provided to NuWave investors.

## IV.    THE AISLIC POLICY PROVIDES COVERAGE FOR THE $250,000 PUNITIVE DAMAGES AWARD

The record demonstrates that the AISLIC Policy covers punitive damages. The AISLIC Policy twice explicitly contemplates coverage for punitive damages. First, it states that AISLIC will pay "damages," including "punitive … damages."  JSOF ¶¶ 134,

8

136.  The AISLIC Policy goes on to state that the punitive damages provision "shall be governed by such applicable law that most favors coverage for such punitive … damages." Id. at ¶ 136 (emphasis added).  Finally, AISLIC voluntarily made the (incorrect) argument that punitive damages are uninsurable under New Jersey law in its December 22, 2010 letter to First Advantage. Id. at ¶ 69.[7]  Equally indicative of the parties' intent that the AISLIC Policy cover punitive damages is the fact that AISLIC can point to no instance where the AISLIC Policy explicitly disavows coverage for punitive damages.

AISLIC relies on one vague policy provision to argue against coverage for punitive damages.  Unlike the above provisions, AISLIC's one supporting provision fails to even mention punitive damages by name.  The provision clearly fails to overcome the multiple, more specific provisions suggesting that the parties intended the AISLIC Policy to cover punitive damages.

The law in all potentially relevant jurisdictions assumes that insurance companies unilaterally write the policies they issue and therefore must be held strictly accountable for their terms.  Hampton Med. Grp., P.A., 840 A.2d at 919; Brabender v. Northern Assurance Co. of North America, 65 F.3d at 273; AIU Ins. Co. v. Superior Court, 799 P.2d 1253, 1265-1266 (Cal. 1990).  AISLIC cannot issue a policy strongly suggesting coverage for punitive damages and then attempt to disavow its own handiwork when it would be advantageous to do so.

---

[7] Punitive damages are insurable in New Jersey under certain circumstances.  Specifically, punitive damages can be covered when coverage is provided for in the policy and when "an innocent third person receives the protection afforded by the insurance."  Ambassador Ins. Co. v. Montes, 388 A.2d 603, 606 (N.J. 1978); see also City of Newark v. Hartford Acc. & Indem. Co., 342 A.2d 513, 518 (N.J. Super. App. Div. 1975) (coverage for damages brought about by intentional act within the scope of offender's employment).

9

## CONCLUSION

For the aforementioned reasons, First Advantage respectfully requests

that the Court grant its Motion for Partial Summary Judgment against AISLIC.

June 13, 2012

By:  /s/ Edward J. Stein
     Edward J. Stein, Esq.
     Jeffrey Cohen, Esq.
     Anna M. Piazza, Esq.
     Anderson Kill & Olick, P.C.
     1251 Avenue of the Americas
     New York, NY  10020
     P:  (212) 278-1000
     F:  (212) 278-1733

     *Attorneys for First Advantage Litigation*
     *Consulting, LLC*

10