UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TUDOR INSURANCE COMPANY,<br><br>        Plaintiff,<br>v.<br><br>FIRST ADVANTAGE LITIGATION CONSULTING, LLC,<br><br>        Defendant. | Civil Action No.: 1:11-cv-03567 (KBF)<br>Related Case: 1:11-cv-8923 (KBF)<br><br>Hon. Katherine B. Forrest, U.S.D.J.<br><br>*Civil Action* |
| FIRST ADVANTAGE LITIGATION CONSULTING, LLC,<br><br>        Counterclaimant and Cross-Complainant,<br>v.<br><br>AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, TUDOR INSURANCE COMPANY, and ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Counterclaim Defendants. | |

**PLAINTIFF TUDOR INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

                                                                                 CARROLL, McNULTY & KULL L.L.C.
                                                                                         570 Lexington Avenue, 8th Floor
                                                                                         New York, NY 10022
                                                                                         (646) 625-4000
                                                                                         Attorneys for Plaintiff,
                                                                                         Tudor Insurance Company

**Of Counsel and on the Brief:**
Margaret F. Catalano (*Pro Hac Vice*)
Jonathan A. Messier

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................II

STATEMENT PURSUANT TO THE JANUARY 18, 2012 ORDER ........................................ III

PRELIMINARY STATEMENT ........................................................................................................ 1

LEGAL ARGUMENT .......................................................................................................................... 2

    I.      Tudor Has Satisfied the Summary Judgment Standard .......................................... 2

    II.     First Advantage's "Blanket" Choice of Law Argument Has Been, and Should Be, Rejected.................................................................................................................... 3

    III.   First Advantage's Request to Modify New York Common Law Must Be Rejected ................................................................................................................................ 7

CONCLUSION ................................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Appalachian Ins. Co. v. Gen. Elec. Co.,
  867 N.Y.S.2d 372 (Sup. Ct. 2008), aff'd sub nom. Appalachian Ins. Co. v. Riunione Adriatic Di Sicurata, 875 N.Y.S.2d 57 (App. Div. 1st Dep't 2009) ........................................................ 5

Bd. of Managers of the 1235 Park Condo. v. Clermont Specialty Managers, Ltd.,
  891 N.Y.S.2d 340 (App. Div. 1st Dep't 2009) .......................................................................... 8

Cambridge Realty Co., LLC v. St. Paul Fire Marine Ins. Co.,
  No. 10-2537, 421 Fed. App'x 52 (2d Cir. 2011) ....................................................................... 8

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) .................................................................................................................. 2

Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.,
  822 N.Y.S.2d 30 (App. Div. 1st Dep't 2006), aff'd, 9 N.Y.3d 928 (2007) .................... 3, 4, 5, 6

FC Bruckner Assoc., L.P., v. Fireman's Fund Ins. Co.,
  __ N.Y.S.2d __, 2012 WL 1623223 (App. Div. 1st Dep't May 10, 2012) ............................ 5, 6

In re Liquidation of Midland Ins. Co.,
  16 N.Y.3d 536 (2011) ............................................................................................................ 3, 4

Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Group, Inc.,
  825 F. Supp. 2d 384 (E.D.N.Y. 2011) ...................................................................................... 9

N.Y. State Ins. Fund v. Mt. Vernon Fire Ins. Co.,
  No. 03-cv-6652, 2005 WL 82036 (S.D.N.Y. Jan. 13, 2005) ..................................................... 5

Safeco Ins. Co. of Am. v. Discover Prop. & Cas. Ins. Co.,
  No. 05 Civ. 8625, 2009 WL 436329 (S.D.N.Y. Feb. 23, 2009) ................................................ 8

Snyder v. National Union Fire Insurance Co.,
  688 F. Supp. 932 (S.D.N.Y. 1988) ............................................................................................ 5

Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,
  89 N.Y.2d 308 (1996) ............................................................................................................ 2, 3

Wausau Business Insurance Co. v. Horizon Administrative Services LLC,
  803 F. Supp. 2d 209 (E.D.N.Y. 2011) .............................................................................. 4, 5, 6

## STATEMENT PURSUANT TO THE JANUARY 18, 2012 ORDER

Pursuant to the Court's Order dated January 18, 2012, Plaintiff/Counterclaim Defendant, Tudor Insurance Company, hereby identifies the following claims that are subject to its Motion for Summary Judgment:

- All claims asserted against First Advantage Litigation Consulting, LLC in the Verified Complaint filed by Tudor Insurance Company, see Exhibit A to DE 1;

- All claims asserted against Tudor Insurance Company in the Counterclaim filed by First Advantage Litigation Consulting, LLC, see DE 9; and

- All cross-claims asserted against Tudor Insurance Company, see DE 31, DE 34, and DE 53.

## **PRELIMINARY STATEMENT**

Like a punch-drunk boxer, First Advantage blindly defends two unsupportable positions in the hope of reversing its fatal error of providing untimely notice under New York law.[1]  First Advantage wrongfully contends that this Court should conduct a single, "blanket" choice of law analysis with respect to all policies involved in this coverage action and, pursuant to that analysis, apply New Jersey law because no other state is "common" to all of the parties.  In the alternative, First Advantage improperly asks this Court to modify New York common law, which clearly applies to the Tudor Policies, and to require Tudor to demonstrate prejudice prior to asserting the defense of late notice.  As explained below, both of these positions are contrary to well-settled law and must be rejected *in seriatim*.

New York law does not support a "blanket" choice of law for all policies involved in a coverage action.  To the contrary, the New York Court of Appeals expressly has rejected this approach because it would defeat the twin objectives of judicial efficiency and uniformity by arbitrarily applying the law where an underlying claim arose rather than the law of the transaction giving rise to the specific insurance policy at issue.  Given numerous, significant contacts with New York in the transaction out of which the Tudor Policies arose, there is no question that New York law applies to the Tudor Policies.

Likewise, New York law regarding late notice is abundantly clear.  For insurance policies issued prior to January 17, 2009, there is no requirement to demonstrate prejudice before being relieved of all duties due to an insured's untimely notice; for policies issued after that date, a prejudice requirement exists pursuant to Insurance Law § 3420(a)(5).  To hold otherwise would disregard the language of the statute and well-settled case law, thereby establishing a dangerous precedent.  First Advantage concedes that its multi-year delay in providing notice to Tudor was

---

[1] Tudor incorporates the abbreviations used in its opening brief and the Joint Statement.

1

untimely.  Therefore, as a matter of New York law, First Advantage's late notice vitiates coverage under the Tudor Policies, and Tudor is entitled to summary judgment in its favor.

## LEGAL ARGUMENT

### I.   Tudor Has Satisfied the Summary Judgment Standard

First Advantage's position is that a trial would be the most appropriate forum in which to hear "all of the evidence" on the issues of late notice and choice of law.  First Advantage incorrectly applies the law.  To defeat summary judgment, a non-movant bears the burden to provide evidence—beyond conclusory assertions—and to designate specific facts showing that there is a genuine issue to be determined at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  As explained herein, First Advantage has not carried its burden.  Therefore, Tudor is entitled to judgment as a matter of law.

First Advantage has not carried its burden to identify an issue of material fact that would preclude the entry of summary judgment in favor of Tudor.  New York law is abundantly clear in that the construction of an insurance policy—like all other contracts—is a matter of law reserved for the Court.  See, e.g., Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 89 N.Y.2d 308, 316 (1996).  As a result, this Court will decide whether coverage exists under the Tudor Policies, and First Advantage's claims of jury confusion and precluding a decision "on the merits" ring hollow.

As discussed below, First Advantage does not take issue with any of the facts relied upon by Tudor in its opening brief.  Indeed, First Advantage expressly admitted all facts presented in the Joint Statement and Tudor's Additional Statement of Material Facts, and First Advantage has not presented any facts that controvert the relevant facts on choice of law and late notice. Applying these facts to the choice of law and late notice issues involving the Tudor Policies reveals that there is no question that New York law applies as a matter of law and, as a matter of

New York law, First Advantage's untimely notice vitiates coverage under the Tudor Policies. Therefore, Tudor is entitled to judgment as a matter of law.

## II. First Advantage's "Blanket" Choice of Law Argument Has Been, and Should Be, Rejected

First Advantage's "blanket" choice of law argument is contrary to New York law. Amalgamating all of the insurance policies in one "blanket" choice of law approach has never been endorsed by New York courts. To the contrary, the New York Court of Appeals recently ruled that a choice of law analysis must be conducted for each insurance policy at issue. See In re Liquidation of Midland Ins. Co., 16 N.Y.3d 536, 546 (2011). This makes sense. In any other contract action involving multiple contracts, a Court never would amalgamate the contacts specific to each contract. The same rule applies to insurance contracts. See Town of Harrison, 89 N.Y.2d at 316.

Moreover, Foster Wheeler rejected a similar position by the parties. In that case—which First Advantage does not even attempt to distinguish—the First Department categorically rejected First Advantage's "blanket" choice of law approach as an oversimplification of choice of law:

> [T]he nonsettling insurers fail to articulate any justification under choice-of-law principles for their argument that we should render a blanket choice-of-law determination for hundreds of different insurance policies issued by dozens of different insurers over several decades. *Each policy constitutes a separate contractual transaction, and to treat insurance policies issued at various widely separated points in time, over a span of decades, as one undifferentiated aggregate for the purpose of choosing one state's law to govern them all, would do considerable violence to the principle . . . that the contacts on which the choice-of-law determination depends should have been known to the parties at the time of contracting . . . .*

Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp., 822 N.Y.S.2d 30, 41 (App. Div. 1st Dep't 2006), aff'd, 9 N.Y.3d 928 (2007) (emphasis added); see also In re Liquidation of

Midland Ins. Co., 16 N.Y.3d at 546. Clearly, the same rational applies here. To treat the individual transactions that gave rise to the Tudor, ASLIC, Zurich, and Federal Policies as one would undermine the principle that the contacts upon which a choice of law determination depends should have been known to the parties *at the time of contracting*.

Indeed, First Advantage cannot cite to a single case in support of its position. Although First Advantage cites Wausau Business Insurance Co. v. Horizon Administrative Services LLC, 803 F. Supp. 2d 209, 211 (E.D.N.Y. 2011), in support of its position, this case actually endorsed the Foster Wheeler approach and applied the law of the insured's domicile. Id. at 214. First Advantage's position is exactly what New York courts seek to prevent because it would disregard the intent of the parties *at the time of contracting*. Therefore, First Advantage's invitation to apply a "blanket" choice of law to all policies should be rejected.

First Advantage's approach—which relies upon a factor that did not exist at the time of contracting, i.e., an underlying claim—would lead to arbitrary results. The fortuity of the NuWave Action's venue in New Jersey—and, for that matter, the location of the Underlying Plaintiffs—cannot possibly provide any insight into BackTrack and Tudor's expectation concerning choice of law at the time when the Tudor Policies were issued. Indeed, the Tudor Policies were issued well before the NuWave Action arose. The Underlying Plaintiffs could have filed suit in BackTrack's home state of New York or in First Advantage's home state of California. Certainly, neither Tudor nor BackTrack expected that the Tudor Policies would be construed under California law.

The absurdity of First Advantage's approach becomes apparent when considering that, by mere happenstance, BackTrack could have defamed individuals who were not located in New

4

Jersey, thereby making some other state's law "common" to this coverage action.[2]  Had BackTrack libeled dozens of individuals located in multiple states, First Advantage's approach would require the application of multiple states' laws to the Tudor Policies—*precisely what Foster Wheeler sought to avoid*.  See Wausau, 803 F. Supp. 2d at 216.  New York courts recognize that infusing tort choice of law principles in the insurance contract choice of law test would produce bizarre results.  See FC Bruckner Assoc., L.P., v. Fireman's Fund Ins. Co., __ N.Y.S.2d __, 2012 WL 1623223 (App. Div. 1st Dep't May 10, 2012) (rejecting the insured's invitation to apply the law where an underlying accident took place to insurance policies); Appalachian Ins. Co. v. Gen. Elec. Co., 867 N.Y.S.2d 372 (Sup. Ct. 2008), aff'd sub nom., Appalachian Ins. Co. v. Riunione Adriatic Di Sicurata, 875 N.Y.S.2d 57 (App. Div. 1st Dep't 2009) ("[T]he choice of law analysis does not focus on the contacts to the underlying environmental claims.  Instead, the choice of law analysis must focus on the state contacts to the insurance policies, the parties, and the insurance transactions.").  Therefore, the fortuitous location of the NuWave Action is irrelevant.[3]

      The high probability for arbitrary results is the reason why the Appellate Division recently quashed First Advantage's position *in toto*.  In FC Bruckner Associates, L.P., v. Fireman's Fund Insurance Co., an insured parent company had its principal place of business in Ohio.  See 2012 WL 1623223 at *1.  Ohio was the location of the insured's broker who

---

[2] Notably, had Zurich, AISLIC, and Federal not been made parties to this coverage action, First Advantage's argument regarding a law "common" to all parties would not have existed.

[3] First Advantage refers to several cases that purport to consider an underlying lawsuit's venue.  These decisions have been recognized as outliers.  See N.Y. State Ins. Fund v. Mt. Vernon Fire Ins. Co., No. 03-cv-6652, 2005 WL 82036, at *3 n.1 (S.D.N.Y. Jan. 13, 2005) (rejecting consideration of the underlying lawsuit's venue).  Moreover, First Advantage's authorities disregard the very case upon which they base their holdings: Snyder v. National Union Fire Insurance Co., 688 F. Supp. 932, 934-35 (S.D.N.Y. 1988) (holding that that choice of law should be resolved "by applying the law of the state which that parties understood to be the principal location of the risk").

negotiated the insurance policy at issue, which contained an Ohio-specific endorsement.  See id. The insured risk was located in multiple states.  See id.  Despite these facts, the insured's subsidiary, which was seeking coverage under the policy at issue, argued that New York law should apply because the subsidiary had its principal place of business in New York and the underlying accident took place in New York.  See id. at *2.

The First Department categorically rejected the insured's position.  The appellate court affirmed the importance of Foster Wheeler and ruled that "[t]he state of the insured's domicile is a fact known to the parties *at the time of contracting*, and . . . is most likely to conform to [the parties'] expectations[.]"[4]  Id. (emphasis added).  The appellate court further found that applying multiple states' law to a single insurance policy—a result that necessarily flows from applying the law of every potential venue for a tort victim—would defy "traditional concerns of judicial economy and uniformity."  Id. (citing Wausau, 803 F. Supp. 2d at 216).  In FC Bruckner Associates, the named insured was incorporated and had its principal place of business in Ohio.  See id.  Therefore, the First Department ruled that Ohio law applied to the policy at issue.  See id.  Tellingly, First Advantage does not even address Foster Wheeler, or the more recent FC Bruckner Associates, in its briefing papers.

Here, the transaction that resulted in the issuance of the Tudor Policies indisputably was centered in New York.  Specifically, the following contacts all support the application of New York law:

- BackTrack's sole place of business was located in New York.  (JS ¶ 119-20; JS ¶ 22; JS ¶ 48; Ex. 13 to JS; Ex. 15 to JS, FIRST000133, FIRST000135, FIRST000137-38, FIRST000140.)  BackTrack also was incorporated in New York.  (JS ¶ 157.)

---

[4] Just as First Advantage ignores relevant law, it ignores this Court's January 17, 2012 Order and Individual Practices regarding the number and length of briefing papers.

6

- BackTrack represented itself as being a business located and incorporated in New York in its dealings with First Advantage's predecessor and with the State of New York. (JS ¶¶ 16, 22, 119-20; Ex. 13 to JS.) Corporate filings made by BackTrack and First Advantage represent that BackTrack was a New York corporation. (Ex. 15 to JS, FIRST000133, FIRST000135, FIRST000137-38, FIRST000140.)

- BackTrack's applications for the Tudor Policies stated that BackTrack had one office located in New York and no "operations in other states[.]" (JS ¶ 119-20.)

- Mechanic, a New York corporation having its only place of business in New York, negotiated and issued the Tudor Policies on behalf of Tudor as Tudor's agent. (TAS ¶¶ 2-7, 12.) Mechanic delivered the Tudor Policies to BackTrack's New York place of business. (TAS ¶¶ 8-9.) Mechanic also received BackTrack's premium payments for the Tudor Policies in New York. (TAS ¶ 10.)

- BackTrack paid taxes to the State of New York in connection with its premium payments. (Ex. 2 to JS, TIC-00040; Ex. 4 to JS, TIC-00097; TAS ¶ 11.)

- The Tudor Policies contain New York-specific endorsements. (Ex. 2, TIC-00040 (noting no pertinent change in the renewal); Ex. 4, TIC-00099.)

- The U.S. District Court for the District of New Jersey found that "the policies issued by Tudor were negotiated, executed, and delivered to a New York insured." (JS ¶ 106.)

First Advantage concedes these facts in the Joint Statement and in its counterstatement to Tudor's Additional Statement of Material Facts. There is no dispute that the transactional contacts all center in New York and support the application of New York law to the Tudor Policies.[5] Application of any other state's law clearly would frustrate the important policy goals of judicial economy and uniformity. Therefore, New York law should apply to the Tudor Policies.

### III.   First Advantage's Request to Modify New York Common Law Must Be Rejected

Recognizing that New York law inevitably will apply to the Tudor Policies, First Advantage asks this Court to modify the common law by requiring Tudor to demonstrate

---

[5] First Advantage does not reasonably anticipate that its "blanket" choice of law argument will succeed. This is why it argues, in the alternative, that California law—the law of First Advantage's domicile—applies to the AISLIC, Zurich, and Federal Policies. (First Advantage Opp'n to AISLIC 11; First Advantage Opp'n to Zurich 9; First Advantage Opp'n to Federal 9.)

7

prejudice. As an initial matter, First Advantage concedes that Insurance Law § 3420(a)(5) does not apply retroactively to the Tudor Policies because they were issued prior to January 17, 2009. (First Advantage Opp'n to Tudor 2 ("[T]his recent legislation is inapplicable to this dispute because it is not retroactive.")) Moreover, First Advantage does not contest that its notice was untimely. This concession conclusively puts this issue to rest, thereby permitting this Court to rule that First Advantage's multi-year delay in providing notice vitiates coverage under the Tudor Policies as a matter of law.

More fundamentally, any suggestion that Insurance Law § 3420(a)(5) should be applied retroactively is contradicted by the statute itself and by state and federal courts alike. See, e.g., Bd. of Managers of the 1235 Park Condo. v. Clermont Specialty Managers, Ltd., 891 N.Y.S.2d 340, 340 (App. Div. 1st Dep't 2009) ("Nor is there merit to the insured's argument that the recent amendment to Insurance Law § 3420(a)[,] . . . requiring a showing of prejudice before an insurer denies coverage on the ground of untimely notice, applies retroactively to the instant 2003 policy; the amendment expressly applies to policies issued on or after its effective date."); accord Cambridge Realty Co., LLC v. St. Paul Fire Marine Ins. Co., No. 10-2537, 421 Fed. App'x 52, 56 n.6 (2d Cir. 2011) (denying application of Insurance Law 3420(a)(5) because "[t]he amendment expressly applies to policies issued on or after January 17, 2009."); Safeco Ins. Co. of Am. v. Discover Prop. & Cas. Ins. Co., No. 05 Civ. 8625, 2009 WL 436329, at *5 n.3 (S.D.N.Y. Feb. 23, 2009) ("In July 2008 New York enacted legislation that would require a showing of prejudice. . . . The legislation is not retroactive and only applies to policies issued after January 17, 2009.").

In light of these cases, it is abundantly clear where New York currently stands on this issue: for policies issued prior to January 17, 2009, no prejudice must be shown; for policies

issued after that date, prejudice must be shown.  See, e.g., Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Group, Inc., 825 F. Supp. 2d 384, 395 (E.D.N.Y. 2011) ("[B]ecause the Policy was issued on June 7, 2008, prior to Insurance Law § 3420(a)(5) taking effect on January 17, 2009, the Plaintiff is not required to show that it was prejudiced by [the insured's] untimely notice."). As discussed in Tudor's opening brief, Tudor has proven that New York law applies to the Tudor Policies and that First Advantage's notice was untimely at common law.  Therefore, Tudor is entitled to a declaration that no coverage exists under the Tudor Policies for the NuWave Action.

First Advantage ironically claims that Tudor would be "treated more favorably" by being granted summary judgment in its favor.  Nonetheless, it was First Advantage that treated Tudor differently than all other insurers by failing to provide notice Tudor with of the NuWave Action until the eve of trial.  This is exactly the type of scenario that New York's late notice/no prejudice rule was designed to address.  First Advantage could have avoided the instant debacle simply by providing Tudor with prompt notice of the NuWave Action—as it did with Zurich, AISLIC, and Federal.  That did not happen.  First Advantage is a large, sophisticated entity that was represented by coverage counsel throughout the NuWave Action.  It must live with the consequences of ignoring the constant drumbeat of admonitions from its insurers and broker to notify Tudor of the NuWave Action.  (Ex. 37 to JS, ZUR00482-89; Ex. 39 to JS, FIRST000073-74; JS ¶ 66; TAS ¶ 13-14; Ex. TIC-3 to TAS.)  Therefore, Tudor is entitled to the entry of summary judgment in its favor on the issue of late notice.

Based upon the foregoing, this Court should apply New York's late notice/no-prejudice rule and find that First Advantage's multi-year delay in providing notice to Tudor vitiates coverage under the Tudor Policies as a matter of law.

## CONCLUSION

Based upon the foregoing, Tudor respectfully requests that this Court grant summary judgment in favor of Plaintiff/Counterclaim Defendant, Tudor Insurance Company, declaring that Tudor has no duty to defend or indemnify Defendant/Counterclaimant, First Advantage Litigation Consulting, LLC, in connection with the NuWave Action and dismissing the Counterclaim and all Cross-claims filed against Tudor.

Dated: New York, New York
June 13, 2012

Respectfully submitted,

CARROLL, McNULTY & KULL L.L.C.

/s/
Margaret F. Catalano (*pro hac vice*)
Jonathan A. Messier
570 Lexington Avenue, 8th Floor
New York, NY 10022
(646) 625-4000
*Attorneys for Plaintiff, Tudor Insurance Company*
mcatalano@cmk.com
jmessier@cmk.com