UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Robert J. Kelly, Esq.
COUGHLIN DUFFY LLP
88 Pine Street, 28th Floor
New York, New York 10005
(212) 483-0105
*Attorneys for Counterclaim Defendant,*
*Zurich American Insurance Company*

| | |
|---|---|
| TUDOR INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br>v.<br><br>FIRST ADVANTAGE LITIGATION CONSULTING, LLC,<br><br>　　　　　Defendant. | Civil Action No.: 1:11-cv-03567 (KBF)<br>Related Case: 1:11-cv-8923 (KBF)<br><br>Hon. Katherine B. Forrest, U.S.D.J.<br><br>*Civil Action* |
| FIRST ADVANTAGE LITIGATION CONSULTING, LLC,<br><br>　　　　　Counterclaimant and Cross-Complainant,<br>v.<br><br>AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, TUDOR INSURANCE COMPANY, and ZURICH AMERICAN INSURANCE COMPANY,<br><br>　　　　　Counterclaim Defendants. | *Document Filed Electronically* |

**ZURICH AMERICAN INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

　　　　　　　　　　　　　　　　　　　　　　　　**COUGHLIN DUFFY LLP**
　　　　　　　　　　　　　　　　　　　　　　　　88 Pine Street, 28th Floor
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10005
　　　　　　　　　　　　　　　　　　　　　　　　(212) 483-0105
　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Counterclaim Defendant,*
　　　　　　　　　　　　　　　　　　　　　　　　*Zurich American Insurance Company*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT PURSUANT TO JANUARY 18, 2012 ORDER

STATEMENT OF FACTS ...................................................................................................1

LEGAL ARGUMENT ..........................................................................................................1

    I.    THE PRIOR PUBLICATION EXCLUSION IN THE
         2005-2006 ZURICH POLICY BARS COVERAGE
         FOR FIRST AMERICAN ..........................................................................................1

         A.  The NuWave Jury Considered All Of The BackTrack Reports ..........................1

         B.  The Later BackTrack Reports Did Not Include New Defamatory
             Material ...................................................................................................................2

         C.  The Prior Publication Exclusion is Not Ambiguous ...........................................3

    II.   EVEN IF THE PRIOR PUBLICATION EXCLUSION DID NOT
         APPLY, ZURICH WOULD HAVE NO DUTY TO INDEMNIFY
         FIRST ADVANTAGE .................................................................................................4

         A.  Zurich Has Established That The Actual Damages Award
             Resulted From BackTrack Reports Published Prior To The 2005-2006
             Zurich Policy Period ..............................................................................................4

         B.  The Arguments Against Allocating Presumed Damages
             To The 2002 BackTrack Report Are Unavailing .................................................6

         C.  Public Policy Precludes Coverage For The Jury's Punitive
             Damages Award .....................................................................................................7

    III.  THE AISLIC POLICY AND THE 2005-2006 ZURICH POLICY SHARE
         DEFENSE COSTS, AND ANY INDEMNITY COSTS, PRO RATA ....................7

         A.  California Law Applies To The Interpretation Of The
             AISLIC Policy ........................................................................................................7

         B.  The Hartford Casualty Case Is Not Controlling ..................................................8

    IV.     THREE $250,000 DEDUCTIBLES APPLY UNDER THE 2005-2006 ZURICH POLICY ................................................................................................10

CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Century Sur. Co. v. United Pac. Ins. Co.,
    109 Cal. App.4th 1246 (2d App. Dist. 2003)..........................................................................8

Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.,
    36 A.D.3d 17 (1st Dep't 2006), aff'd, 9 N.Y.3d 928 (2007) ................................................ 7-8

City Prods. Corp. v. Globe Indem. Co.,
    88 Cal. App.3d 31 (1979) ......................................................................................................7

CSE Ins. Group v. Northbrook Prop. & Cas. Co.,
    23 Cal. App.4th 1839 (2d App. Dist. 1994)............................................................................8

Dart Indus., Inc. v. Commercial Union Ins. Co.,
    28 Cal.4th 1059 (2002) ..........................................................................................................8

Fireman's Fund Ins. Co. v. Maryland Cas. Co.,
    65 Cal. App.4th 1279 (1st App. Dist. 1998) ..................................................................... 8-10

Hartford Cas. Ins. Co. v. Travelers Indem. Co.,
    110 Cal. App.4th 710 (1st Dist. 2003) ................................................................................ 8-9

Hasson v. Ford Motor Co.,
    32 Cal.3d 388 (1982) .............................................................................................................7

Maddox v. St. Paul Fire & Marine Ins. Co.,
    179 F. Supp.2d 527 (W.D. Pa. 2001).................................................................................. 3-4

Taco Bell Corp. v. Continental Cas. Co.,
    388 F.3d 1069 (7th Cir. 2004)................................................................................................3

Travelers Cas. & Sur. Co. v. Century Sur. Co.,
    118 Cal. App.4th 1156 (4th App. Dist. 2004).........................................................................8

**STATEMENT PURSUANT TO JANUARY 18, 2012 ORDER**

Pursuant to the Court's Order requiring identification of the claims being asserted in each party's brief, Counterclaim Defendant Zurich American Insurance Company ("Zurich") states as follows:

**I.   THE PRIOR PUBLICATION EXCLUSION IN THE 2005-2006 ZURICH POLICY BARS COVERAGE FOR FIRST AMERICAN**

This argument is in support of Zurich's Counterclaim against Defendant/Counterclaim Plaintiff, First Advantage Litigation Consulting, LLC ("First Advantage"), seeking a declaration that Zurich has no duty to indemnify, and no further duty to defend, First Advantage.

**II.   EVEN IF THE PRIOR PUBLICATION EXCLUSION DID NOT APPLY, ZURICH WOULD HAVE NO DUTY TO INDEMNIFY FIRST ADVANTAGE**

This argument is in support of Zurich's Counterclaim against Defendant/Counterclaim Plaintiff, First Advantage, seeking a declaration that Zurich has no duty to indemnify, and no further duty to defend, First Advantage.

**III.   THE AISLIC POLICY AND THE 2005-2006 ZURICH POLICY SHARE DEFENSE COSTS, AND ANY INDEMNITY COSTS, PRO RATA**

This argument is in support of Zurich's Cross-Claim against Counterclaim Defendant American International Specialty Lines Insurance Company ("AISLIC"), seeking a declaration that AISLIC has an obligation to reimburse Zurich for certain defense costs incurred by Zurich on behalf of First Advantage.

**IV.   THREE $250,000 DEDUCTIBLES APPLY UNDER THE 2005-2006 ZURICH POLICY**

This argument is in support of Zurich's Counterclaim against Defendant/Counterclaim Plaintiff, First Advantage, seeking a declaration regarding the rights and obligations of the parties under the Zurich Policies.

**STATEMENT OF FACTS**

Zurich incorporates herein the Statement of Facts as set forth in Zurich's Memorandum of Law in Support of Its Motion for Summary Judgment ("Initial Memorandum of Law").

**LEGAL ARGUMENT**

**I.   THE PRIOR PUBLICATION EXCLUSION IN THE 2005-2006 ZURICH POLICY BARS COVERAGE FOR FIRST AMERICAN**

For the reasons expressed in Zurich's Initial Memorandum of Law, Zurich has no duty to indemnify, and no further duty to defend, First Advantage with respect to the claims asserted against it in the NuWave action, because the prior publication exclusion bars coverage. In opposition to Zurich's summary judgment motion,[1] First Advantage makes several arguments in an attempt to avoid the clear applicability of the prior publication exclusion. As explained below, none of these arguments withstands scrutiny, and they should be rejected.[2]

**A.   The NuWave Jury Considered All Of The BackTrack Reports**

First American argues that the trial court in the NuWave action ruled on summary judgment that the statute of limitations for defamation in New Jersey is one year, and therefore the jury verdict must have been based on the BackTrack Reports issued within one year of the filing of the suit in 2006. This argument is without merit. First of all, the trial court *never ruled* that the statute of limitations barred any of the BackTrack Reports from consideration by the jury. To the contrary, on three separate occasions – on summary judgment, on a motion for reconsideration, and at trial – the trial court denied First Advantage's request that the October

---

[1] In violation of this Court's Individual Practices for Civil Cases, and in direct contravention of this Court's Order of January 18, 2012, First Advantage filed multiple memoranda of law, totaling significantly more than 25 pages, in opposition to the insurers' summary judgment motions. All other parties have abided by the Court's rules.

[2] First Advantage concedes that the only Zurich Policy potentially triggered in the NuWave action is the 2005-2006 Zurich Policy. In addition, First Advantage admits that the fact that the first publication of defamatory material was issued by First Advantage's predecessor-in-interest, BackTrack Reports, Inc., as opposed to First Advantage itself, does not invalidate the applicability of the prior publication exclusion with respect to First Advantage.

1

2002 BackTrack Report and the May 2004 BackTrack Report be dismissed from the lawsuit on statute of limitations grounds.  (Zurich's Reply Statement of Facts, ¶ 1.)  Indeed, First Advantage is well aware that all of the BackTrack Reports, including those issued prior to a year before the filing of the NuWave action, were considered by the jury, because one of its arguments on appeal is that the trial court erred by denying First Advantage's statute of limitations motions and allowing the jury to consider the 2002 and 2004 BackTrack Reports.

Moreover, even if First Advantage could demonstrate that the jury verdict was solely attributable to BackTrack Reports issued during the 2005-2006 Zurich Policy period – and it cannot – the prior publication exclusion would still apply.  The exclusion states that coverage is barred for "personal and advertising injury" arising out of "publication of material whose first publication took place before the beginning of the policy period."  (Joint Statement of Facts ("JS"), ¶ 124.)  Because the statements that the jury found to be defamatory were first published in October 2002, the exclusion would still apply, even if the jury had only awarded damages based upon BackTrack Reports issued during the 2005-2006 Zurich Policy period.

### B.     The Later BackTrack Reports Did Not Include New Defamatory Material

First Advantage also claims that the prior publication exclusion should not apply because the later BackTrack Reports included additional disparaging information about NuWave that was not contained in earlier reports.  Specifically, First Advantage points to statements in the September 26, 2005 BackTrack Report supposedly referring to a $50 million decline in NuWave's assets under management and "poor performance" on the part of NuWave's traders.  However, First Advantage ignores the fact that the jury in the NuWave action did not find that these statements, or any other statements that were contained in later BackTrack Reports but not in the October 2002 BackTrack Report, were defamatory.  In fact, the plaintiffs in the NuWave

2

action never even alleged that any of the additional information in the later BackTrack Reports was defamatory. Because the additional information in the later BackTrack Reports did not contain any new defamatory material, the additional information has no bearing on the operation of the prior publication exclusion.[3]

For these reasons, First Advantage's reliance on Taco Bell Corp. v. Continental Casualty Co., 388 F.3d 1069 (7th Cir. 2004), is misplaced. There, the court held that the prior publication exclusion did not apply because the underlying plaintiff had specifically alleged that commercials within the insurer's policy period misappropriated different, specific ideas constituting "fresh wrongs." Such is not the case here. In the NuWave action, the plaintiffs never alleged, and the jury never found, that any new, different defamatory statements were published by First American in the 2005-2006 Zurich Policy period. All of the statements that the jury found to be defamatory were statements first published in the October 2002 BackTrack Report, long before the inception of the 2005-2006 Zurich Policy.

### C. The Prior Publication Exclusion Is Not Ambiguous

In a last-ditch effort to avoid the straightforward application of the prior publication exclusion, First Advantage argues that the exclusion is ambiguous because it does not specify whether the prior publication must be injurious. In doing so, it relies on Maddox v. St. Paul Fire & Marine Insurance Co., 179 F. Supp.2d 527 (W.D. Pa. 2001), a case involving trademark infringement in which the insured first used a particular trademark before it was registered by someone else, but then infringed upon the trademark by continuing to use it after the registration. Until the date that the trademark was actually registered, the insured's use of the mark was not

---

[3] Furthermore, First Advantage's assertion that the trial court in the NuWave action concluded that the BackTrack Reports were not "qualitatively identical" is factually inaccurate. The trial court made no finding as to whether the BackTrack Reports were "qualitatively identical." Instead, the court found that the republication doctrine did not apply to First Advantage because it was not a mass media publisher. (JS ¶ 54, Ex. 32, FADa43-FADa44.)

3

wrongful. Because the insured's first *wrongful* use of the trademark – the insured's initial use after the trademark was registered – occurred within the insurer's policy period, the Maddox court held that the prior publication exclusion did not apply. In contrast, here, each publication by First Advantage of defamatory statements, including those prior to the 2005-2006 Zurich Policy period, were wrongful. Because First Advantage's first wrongful publication took place prior to the 2005-2006 Zurich Policy period, Maddox is inapposite, and First Advantage's ambiguity argument fails. For the foregoing reasons, and those expressed in Zurich's Initial Memorandum of Law, the prior publication exclusion clearly applies and precludes coverage for First Advantage under the 2005-2006 Zurich Policy.[4]

## II.    EVEN IF THE PRIOR PUBLICATION EXCLUSION DID NOT APPLY, ZURICH WOULD HAVE NO DUTY TO INDEMNIFY FIRST ADVANTAGE

### A.    Zurich Has Established That The Actual Damages Award Resulted From BackTrack Reports Published Prior To The 2005-2006 Zurich Policy Period

In Zurich's Initial Memorandum of Law, Zurich demonstrated that even if the prior publication exclusion did not apply, Zurich would have no duty to indemnify First Advantage for the jury's award of actual damages because the evidence in the NuWave action established that Sagres' diminished investment in NuWave occurred in the Spring of 2005, and therefore the jury's actual damages award must have been based on BackTrack Reports issued prior to the 2005-2006 Zurich Policy period. First Advantage contends that a genuine issue of material fact exists because a BackTrack Report was issued on May 27, 2005, and the Spring of 2005 did not end until mid-June of 2005. Therefore, First Advantage claims that the diminished investment

---

[4] First Advantage itself appears to recognize the straightforward application of the exclusion under this factual scenario, since it has argued against AISLIC that if AISLIC truly desired to bar coverage under its policy for publications prior to the AISLIC Policy period, it should have included a prior publication exclusion.

could have been based on the May 27, 2005 BackTrack Report, which was issued during the 2005-2006 Zurich Policy period.

What First Advantage fails to acknowledge, however, is that the May 27, 2005 BackTrack Report *did not contain any defamatory statements*.  It was an updated report to Moore Capital and it included neither the transcript of BackTrack's interview with Hyman and DeFalco, nor a republication of any of the defamatory statements from that interview.  (JS ¶ 33, Ex. 20.)  Indeed, the first BackTrack Report that was issued within the 2005-2006 Zurich Policy period which contained defamatory statements was the September 26, 2005 BackTrack Report issued to New Finance Capital Partners, published long after the Spring of 2005.  (JS ¶ 34, Ex. 21.)  Because Sagres' diminished investment in NuWave in the Spring of 2005 was necessarily based on defamatory statements published in or prior to the Spring of 2005, and First Advantage's first defamatory publication within the 2005-2006 Zurich Policy period did not take place until after the Spring of 2005, the actual damages award could not have been based on a publication in the Zurich Policy period.

Similarly unavailing is Tudor's argument that the actual damages awarded by the jury should be allocated to Zurich because they resulted from slander that took place within the 2005-2006 Zurich Policy period.  The jury awarded actual damages against First Advantage because the defamatory statements published in certain BackTrack Reports were spread through the investment community, ultimately causing Sagres to invest half of what it would have otherwise invested in NuWave.  The fact that Sagres' consultant, Mr. Caleca, could have been informed about the defamatory statements during the Zurich's policy periods does not change the fact that First Advantage published the defamatory statements prior to the 2005-2006 Zurich Policy period.  Because First Advantage was only liable for its defamatory publications, and the

5

publications resulting in Sagres' diminished investment in NuWave were necessarily issued prior to the 2005-2006 Zurich Policy period, Zurich has no duty to indemnify First Advantage for the actual damages award against it.

### B. The Arguments Against Allocating Presumed Damages To The 2002 BackTrack Report Are Unavailing

Tudor opposes Zurich's position that the presumed damages award against First Advantage should be allocated solely to the October 2002 BackTrack Report. As Tudor itself points out, however, under the doctrine of presumed damages in New Jersey defamation law, damages arise immediately upon the defendant's publication of defamatory material. Because First Advantage was liable for presumed damages as soon as it published the October 2002 BackTrack Report, the presumed damages award should be allocated to that report.

First Advantage asserts that the presumed damages award should be allocated to BackTrack Reports issued within the 2005-2006 Zurich Policy period because in light of the one-year statute of limitations on defamation, the jury necessarily awarded damages only for BackTrack Reports published at that time. As Zurich explained above, however, the jury considered all of the BackTrack Reports, including the October 2002 BackTrack Report. Therefore, First Advantage's argument lacks a basis in fact and should be rejected.

### C. Public Policy Precludes Coverage For The Jury's Punitive Damages Award

First Advantage argues that the trial court in the NuWave action allowed the jury to award punitive damages based merely on a finding that First Advantage had been reckless, and therefore that portion of the award is covered because coverage for reckless conduct does not violate public policy. Contrary to First Advantage's contentions, the trial court specifically informed the jury that it could award punitive damages only upon a finding that First Advantage engaged in "malicious" conduct or acted with a "wanton and willful disregard of another's

rights." (Declaration of Anna Piazza, Esq., Ex. A, 40:14-41:15.) Such conduct would qualify for punitive damages under California law. See Hasson v. Ford Motor Co., 32 Cal.3d 388, 402 (1982). Because punitive damages are uninsurable under California law, First Advantage would not be entitled to indemnification from Zurich for the punitive damages award assessed against it in the NuWave action. See City Prods. Corp. v. Globe Indem. Co., 88 Cal. App.3d 31, 35 (1979).

## III. THE AISLIC POLICY AND THE 2005-2006 ZURICH POLICY SHARE DEFENSE COSTS, AND ANY INDEMNITY COSTS, PRO RATA

### A. California Law Applies To The Interpretation Of The AISLIC Policy

For the reasons expressed in Zurich's Initial Memorandum of Law and in its Opposition Memorandum of Law, the AISLIC Policy should be interpreted according to California law. AISLIC attempts to circumvent the holding of Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp., 36 A.D.3d 17 (1st Dep't 2006), aff'd, 9 N.Y.3d 928 (2007), that in the context of insurance policies issued to policyholders with business in multiple states, the court should apply the law of the policyholder's principal place of business. Id. at 24-25. Under Foster Wheeler, because the AISLIC Policy was issued to First American Corporation, which conducts business in multiple states, the Court should apply the law of First American Corporation's principal place of business, California. Nevertheless, even if the holding in Foster Wheeler were not dispositive – which it is – California law would still apply because California has more significant contacts to the AISLIC Policy than New York.

The AISLIC Policy was issued to First American Corporation, a California corporation. (JS ¶¶ 128, 158.) Furthermore, First American Corporation has its principal place of business in California. (JS ¶ 158.) Although AISLIC emphasizes that the producer for the AISLIC Policy was located in New York, the location of non-parties to the insurance contract such as insurance

7

producers has little weight in a grouping of contacts analysis. See Foster Wheeler, 36 A.D.3d at 27. Additionally, the mere fact that AISLIC is a New York corporation is of little significance in comparison to First American Corporation's more robust contacts with California, especially considering that AISLIC is not even authorized to provide insurance in New York. (JS ¶ 9, Ex. 8, AISLIC 000001.)

### B. The Hartford Casualty Case Is Not Controlling

Likely aware that New York choice-of-law principles dictate that the AISLIC Policy be interpreted under California law, AISLIC relies almost exclusively on Hartford Casualty Insurance Co. v. Travelers Indemnity Co., 110 Cal. App.4th 710 (1st Dist. 2003), in an attempt to avoid its pro rata obligations toward Zurich. The Hartford Casualty case is unpersuasive as inconsistent with the weight of recent California jurisprudence addressing the interaction of pro rata clauses and excess clauses. The vast majority of recent California appellate cases have held in accordance with Fireman's Fund Ins. Co. v. Maryland Casualty Co., 65 Cal. App.4th 1279, 1305 (1st App. Dist. 1998), that when one policy contains a pro rata "other insurance" clause and the other policy contains an excess "other insurance" clause, the policies must contribute pro rata.[5] Indeed, even the Hartford Casualty court recognized that under California law, "the recent trend is against rigid enforcement of excess only clauses." Hartford Casualty, 110 Cal. App.4th at 726.

The Hartford Casualty court departed from the "recent trend" only because it concluded that the particular facts of the case presented special equities that favored enforcement of the excess clause over the pro rata clause. Id. Specifically, the "other insurance" clause in the

---

[5] See, e.g., Travelers Cas. & Sur. Co. v. Century Sur. Co., 118 Cal. App.4th 1156, 1161-62 (4th App. Dist. 2004); Century Surety Co. v. United Pac. Ins. Co., 109 Cal. App.4th 1246, 1260 (2d App. Dist. 2003); CSE Ins. Group v. Northbrook Prop. & Cas. Co., 23 Cal. App.4th 1839, 1845 (2d App. Dist. 1994); see also Dart Indus., Inc. v. Commercial Union Ins. Co., 28 Cal.4th 1059, 1079-80 (2002) (citing Fireman's Fund with approval).

Travelers policy stated that the policy was generally primary but was excess over other insurance when Traveler's Named Insured was added as an additional insured on another policy.  Id.  The court emphasized that unlike the broad excess clause in Fireman's Fund which purported to make coverage excess whenever other insurance existed, the Travelers policy declared itself to be excess only in the situation where the parties and the insurers were most likely to intend that result - when Traveler's Named Insured was added as an additional insured on another insurer's policy for some specific event or situation.  Id. at 726-27.

Unlike the "other insurance" clause in the Traveler's policy in Hartford Casualty, which was narrowly tailored to provide excess coverage only in certain situations, the excess clause in the AISLIC Policy attempts to make AISLIC excess whenever other insurance exists.  (JS ¶ 9, Ex. 8, AISLIC 000015.)  This is the very type of broad excess clause that is disfavored under California law because it is akin to an escape clause.  See Fireman's Fund, 65 Cal. App.4th at 1305.  Accordingly, the special equities that existed in Hartford Casualty do not exist here.

.       AISLIC emphasizes that the 2005-2006 Zurich Policy states that the primary coverage it provides is not affected unless another policy provides primary coverage.  However, AISLIC ignores the fact that the AISLIC Policy is a primary insurance policy.  A primary insurance policy attaches immediately upon a particular event.  Fireman's Fund, 65 Cal. App.4th at 1304.  In contrast, under an excess policy, liability attaches only after a predetermined amount of primary coverage has been exhausted.  Id.  The AISLIC Policy is a primary policy because it attached immediately upon First Advantage's notification to AISLIC of the NuWave claim, and no predetermined amount of insurance coverage sat below the AISLIC Policy.  Indeed, AISLIC's entire argument that the "other insurance" clauses do not conflict is based on circular reasoning, whereby AISLIC is considered an excess insurer by virtue of its own "other

9

insurance" clause before the "other insurance" clause in the Zurich Policy is considered. This type of reasoning was explicitly rejected in the Fireman's Fund line of cases, and it should be rejected here as well.

### IV. THREE $250,000 DEDUCTIBLES APPLY UNDER THE 2005-2006 ZURICH POLICY

First Advantage agrees that three deductibles apply under the 2005-2006 Zurich policy with respect to the claims asserted against it in the NuWave action. First Advantage contends, however, that each deductible amount is $5,000 per offense instead of $250,000 per offense. This is simply wrong. Although the deductible amounts are typed slightly above the line to which they correspond, it is clear that the deductible amount for "Bodily Injury and Property Damage Liability" is $250,000 each occurrence; that there is no entry for "Bodily Injury and Property Damage Liability" per claim because the per occurrence rather than the per claim option was selected; that the deductible amount for "Personal and Advertising Injury Liability" is $250,000 per offense; that the deductible amount for "Medical Payments" is $5,000 per accident; and that the deductible amount for "Employee Benefits Liability" is $250,000 per claim. (JS, ¶ 7, Ex. 7, ZUR 00746.) Because the deductible amount designated for "Personal and Advertising Injury Liability" is $250,000 per offense, Zurich is entitled to a declaration that three $250,000 deductibles apply.

### CONCLUSION

For the foregoing reasons, and the reasons expressed in Zurich's previous memoranda of law, Zurich respectfully requests that the Court grant its Motion for Summary Judgment.

            *By:*  <u>*s/ Robert J. Kelly*</u>

               Robert J. Kelly
               COUGHLIN DUFFY LLP
               88 Pine Street, 28th Floor
               New York, New York 10005
               (212) 483-0105
               *Attorneys for Counterclaim Defendant,*
               *Zurich American Insurance Company*

Dated:  June 13, 2012